UNITED STATES v. STEENERSON et al.

(Circuit Court of Appeals, Eighth Circuit.  May 16, 1892.)

No. 57.

1. PUBLIC LANDS—TITLE—REPLEVIN FOR TIMBER.
When the ownership of logs alleged to have been cut on land belonging to the United States depends upon the ownership of the land, the title to the land may be investigated and determined in an action of replevin brought by the United States to recover the logs.

2. SAME—PRE-EMPTION—CANCELLATION—COMMISSIONER.
The commissioner of the general land office, by virtue of the general power of supervision vested in him over the acts of the register and receiver of the local land offices, may cancel a pre-emption entry, and the final certificate issued to the pre-emptor, on the ground that the entry was fraudulently made and void under Rev. St. U. S. § 2262.

8. SAME—VALIDITY—COLLATERAL ATTACK.
When such cancellation has been made the pre-emptor has no such final adjudication in his favor in the certificate issued that his right to the land cannot be collaterally attacked, or that the invalidity of the certificate must be adjudicated in a proceeding brought for that purpose.

4. SAME—CANCELLATION OF ENTRY—EVIDENCE—REPLEVIN.
And therefore, in an action of replevin by the United States for logs cut on public lands which defendant claims by virtue of the canceled entry and certificates, the United States is entitled to introduce evidence of such cancellation, and that the entry was fraudulently made by the pre-emptor for the purpose of enabling defendant to strip the land of timber.

In Error to the Circuit Court of the United States for the District of Minnesota.

Replevin by the United States against Christopher Steenerson and others, copartners as the Clear Water Land & Logging Company, Hugh Thompson, and Marcus Johnson, for certain logs.  There was judgment for defendants, and plaintiff brings error.  Judgment reversed.

Eugene G. Hay, U. S. Atty.

Halvor Steenerson, Frank B. Kellogg, and C. A. Severance, for defendants in error.

Before CALDWELL, Circuit Judge, and SHIRAS, District Judge.

SHIRAS, District Judge.  The facts necessary for a proper understanding of the questions presented by the record in this case are as follows: In September, 1883, one Hans Hanson made a pre-emption entry of the S. W. ¼ of section 33, township 147, range 38 W., situated in Beltrami county, Minn.  On June 24, 1884, he filed a declaratory statement of pre-emption, and on November 1, 1884, made final proof of entry, including the necessary payments, and received a certificate from the receiver of the land office at Crookston, Minn., showing payment in full for the land named.  On the same day the certificate was issued to him Hanson executed a deed of the land to Andrew Steenerson, who was a partner in the defendant firm, known as the "Clear Water Land & Logging Company."  That company, during the winter of 1885–86, cut from the land named about 754,000 feet of logs, and placed them in the waters of the Clear Water river.  On the 29th of April, 1886, the United States brought the present action in the United States circuit court for the district of Minnesota to recover possession of said logs, a

writ of replevin being issued and levied, the defendant company giving bond under the provisions of the state statute, and thereby regaining possession of the logs levied on. The case was tried by the court, a jury being waived. On behalf of the United States it was proved that the land named had formed part of the public domain, and that no patent had ever been issued therefor, and that the logs in question had been cut from the trees growing thereon. On behalf of the defendants it was proved that Hans Hanson had entered the land as above stated, and had obtained the receiver's certificate, showing final payment in November, 1884, and that the defendant company had cut the logs after that date under right and title derived from Hanson. Thereupon, on behalf of the United States, evidence was offered tending to show that Hanson did not enter the land for the purpose of actual settlement and residence, as required by the provisions of the statute authorizing pre-emption entries, but for the sole purpose of enabling the defendant firm to strip the land of the timber growing thereon; that said firm employed him to make the entry in their interest, and for the purpose named, paying him the sum of $500 for so doing; that the amount of timber cut was far more than was needed for the actual cultivation or improvement of the land; and that, in pursuance of such illegal bargain, as soon as Hanson obtained the certificate showing final payment upon the land, he executed a conveyance thereof to one of the defendant firm; and that in the year 1890 the commissioner of the general land office canceled the entry made by Hanson and the final certificate issued to him, on the ground that the entry was not made in good faith, but merely for the purpose of enabling the defendant firm to strip the land of the timber growing thereon. The evidence thus offered was, upon objection made, ruled out, to which ruling exceptions were duly taken, and thereupon judgment was rendered in favor of the defendants, the court holding that, "until the invalidity of the certificate had been judicially ascertained and declared by some tribunal having authority to investigate the case and so adjudicate, the United States had no such title or right of possession to the logs in controversy as would enable it to maintain replevin."

It is well settled that the United States can maintain an action of replevin to retake logs wrongfully cut from land belonging to the government, and, where the ownership of the logs is dependent upon the question of the title of the lands from which the logs were cut, that issue may be investigated and determined in the action of replevin. Thus in *U. S.* v. *Cook,* 19 Wall. 591, an action in replevin, brought to recover possession of logs cut upon an Indian reservation in Wisconsin by the Indians occupying the same, and by them sold to the defendant, Cook, the supreme court decided that the fee title of the lands was in the United States; that the Indians had the right of occupancy, but not the right to cut the timber for purposes of sale merely; that such cutting was waste; that, "under such circumstances, when cut, it became the property of the United States absolutely, discharged of any rights of the Indians therein. The cutting was waste, and, in accordance with well-settled principles, the owner of the fee may seize the timber cut, arrest

it by replevin, or proceed in trover for its conversion;" and that the United States was entitled to the same remedies for the recovery of the property as an individual citizen. In *Schulenberg* v. *Harriman*, 21 Wall. 44, there was involved the title to certain pine logs cut from lands granted to the state of Wisconsin to aid in the construction of railroads in that state. The defendant was the agent of the state, and the controversy was, in fact, between the plaintiff and the state, it being admitted that the plaintiff had the actual possession of the logs when the same were seized by the agent of the state, from whom the plaintiff replevied them. The supreme court held that the rights of the parties were dependent upon the ownership of the land from which the logs were cut, and, investigating that question, the court found that the title remained in the state, and, so finding, held that—

"The title to the land remaining in the state, the lumber cut upon the land belonged to the state. Whilst the timber was standing it constituted a part of the realty; being severed from the soil its character was changed; it became personalty, but its title was not affected; it continued, as previously, the property of the owner of the land, and could be pursued wherever it was carried. All the remedies were open to the owner which the law affords in other cases of the wrongful removal or conversion of personal property."

In *Beecher* v. *Wetherby*, 95 U. S. 517,—an action in replevin for logs cut from a section of land situated in Wisconsin,—the plaintiff claimed title to the land under patents issued by the United States in 1872, and the defendant under patents from the state, issued in 1865 and 1870. The land had at one time been occupied by the Menomonee Indians, but it was claimed that the fee passed to the state upon its admission to the Union, and when the Indians ceased to occupy it, the right of occupancy followed the fee, and hence the land and the right to the timber thereon became wholly vested in the state, and hence passed to the defendants under the patents issued by the state. Thus the right to the logs was shown to be dependent upon the ownership of the land from which they had been cut, and that issue required the determination of the question whether the fee of the land passed to the state by force of the grant contained in the act of congress under which Wisconsin became a state in the Union, or whether the fee passed by the patents subsequently issued by the United States. The court, after a full examination of the facts presented on the record, held that the title of the land had passed to the state, and therefore the plaintiff acquired nothing under the patents issued to him at a subsequent date, and hence had no property in or right to the timber in dispute. These decisions of the court of last resort settle beyond cavil the propositions that standing timber is a part of the realty upon which it grows; that, when severed therefrom, its character changes to personalty, but the title thereto is not affected by such severance; that, if cut and carried away by a wrongdoer, the owner of the land may retake the timber wherever found; that, when thus retaken by means of a writ of replevin, it is open to both parties in the replevin action to assert title to the realty from which the timber was cut, as proof of the ownership of the timber; that, when conflicting claims to the title of the

realty are thus asserted, it becomes the duty of the court to determine, in the replevin action, which party has the better title to the realty, in order to determine the ownership of the timber.

From the facts disclosed on the record now before us it appears that the title to the realty from which the timber was cut was squarely at issue between the parties. The ownership of the logs was clearly dependent upon the question of the ownership of the land, to which both parties asserted title, and hence it became the duty of the court to investigate and adjudicate that issue. On behalf of the United States it was proven that the land was originally part of the public domain, and that no patent or other grant of title had been made. To meet the *prima facie* case thus made, the defendants proved that Hanson had made a preemption entry of the land, had completed the requisite payments and obtained the receipt or certificate of the receiver of the local land office showing such payment in full. Thereupon it was proposed, on behalf of the United States, to introduce evidence tending to show that the entry made by Hanson was not in good faith, and was in fact fraudulent, and made solely for the purpose of enabling the defendant firm to strip the land of the timber, and that the commissioner of the land office had canceled the entry on the ground of fraud. The trial court held that, until the validity of the certificate of final payment had been judicially ascertained and declared by some tribunal having authority to investigate the case, the United States had no such title or right of possession to the logs in controversy as would enable it to maintain replevin. As we gather it from the record, the court held that the entry made by Hanson, and the issuance to him of a certificate of final payment by the receiver of the local land office, regardless of the question of fraud in such entry, conveyed, as against the United States, the title and consequent right of possession of such realty to the pre-emptor in such sense that the United States, in order to revest the title in itself, must institute judicial proceedings to set aside the apparent or defeasible title vested in the pre-emptor and his grantees. In support of this view many decisions of the supreme court are cited by counsel, in which it is held that, when the right to a patent for lands has once become vested in a purchaser or pre-emptor, the same are segregated from the public domain, are no longer subject to entry, and the vested right to the patent thereto is equivalent to a patent actually issued. See *Carroll* v. *Safford*, 3 How. 441; *Witherspoon* v. *Duncan*, 4 Wall. 210; *Stark* v. *Starrs*, 6 Wall. 417; *Myers* v. *Croft*, 13 Wall. 291; *Wirth* v. *Branson*, 98 U. S. 118; *Simmons* v. *Wagner*, 101 U. S. 260; *Deffeback* v. *Hawke*, 115 U. S. 405, 6 Sup. Ct. Rep. 95; *Cornelius* v. *Kessel*, 128 U. S. 456, 9 Sup. Ct. Rep. 122. The principle on which these decisions are based is that when a homesteader or pre-emptor has, in good faith, performed all the acts which, under the provisions of the statutes of the United States, are necessary to complete his right to the land, then he becomes, equitably, the owner of the same, and the United States holds the naked legal title as a trustee for his benefit. For the protection of his rights, thus acquired, it is held that in a contest involving the title of the land an established

right to a patent will be deemed to be the equivalent of a patent. This rule, however, has been adopted solely as a means for the protection of those who have, in good faith, established a right to a patent by performance of the requisite conditions. The final certificate or receipt acknowledging payment in full, and signed by the officers of the local land office, is not in terms nor in legal effect a conveyance of the land. It is merely evidence on behalf of the party to whom it is issued. In a contest involving the title to land, wherein a person claims adversely to the United States, it is open to such claimant, notwithstanding the legal title remains in the United States, to prove that by performance on his part of the requisite acts he has become the equitable owner of the land, and that the United States holds the legal title in trust for him; but, as the claimant in such case has not received a patent or formal conveyance, and has not become possessed of the legal title, he is required to show performance, on his part, of the acts which, when done, entitle him, under the law, to demand a patent of the land. When evidence of this kind is offered on behalf on the claimant it is open to the United States to meet it by proof of any fact or facts which, if established, will show that the claimant has not become the real owner of the realty. If it be true, in a given case, that the entry of the land was not made in good faith, but in fraud of the law, certainly it cannot be said that the claimant has become the equitable owner of the land, and that the United States is merely a trustee holding the legal title for his benefit. Fraud vitiates any transaction based thereon, and will destroy any asserted title to property, no matter in what form the evidence of such title may exist. *The Amistad*, 15 Pet. 518; *League v. De Young*, 11 How. 185.

It is well settled in Minnesota that in an action of replevin, wherein title to property is claimed under a deed of assignment or other formal conveyance, the validity thereof may be attacked on the ground of fraud, and such issue may be determined in the replevin proceedings. *Blackman v. Wheaton*, 13 Minn. 326, (Gil. 299;) *Tupper v. Thompson*, 26 Minn. 385, 4 N. W. Rep. 621; *Furman v. Tenny*, 28 Minn. 77, 9 N. W. Rep. 172. When it is desired to obtain the cancellation of a deed or patent conveying the legal title of realty on the ground of fraud it is necessary to invoke the aid of a court of equity, but where the relief sought is not equitable in its nature a court of law is certainly competent to adjudicate the issue of fraud. In the case at bar it is not claimed that a patent to the land had been issued, and therefore the legal title remained in the United States. The circuit court in effect held that proof of entry and the execution of the receipt showing final payment deprived the United States of the title to the land, regardless of the question whether such entry and payment were made in good faith or fraudulently, and that, before the United States could maintain its right to the logs in controversy, it must, by the adjudication of some proper tribunal, set aside and cancel the title to the realty held by Hanson under his pre-emption entry. It cannot be questioned that the land department is primarily charged with the duty of supervising the disposition of the public domain; and in cases within its jurisdiction, and

wherein final action has been had authorizing the disposition of land, such action cannot be collaterally assailed. *Steel* v. *Smelting Co.*, 106 U. S. 447, 1 Sup. Ct. Rep. 389; *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Davis* v. *Wiebbold*, 139 U. S. 507, 11 Sup. Ct. Rep. 628. Thus, if it appears that under the direction of the land office, a patent has been issued to a pre-emptor, or that the right of the pre-emptor to a patent has been finally adjudged in his favor by the department, and nothing remains to be done but the ministerial act of issuing and delivering the patent in accordance with the judgment of the department, then the right of the pre-emptor is evidenced by a final judgment of the land department in his favor, which cannot be collaterally assailed; but if it appears in a given case that when, in the proper course of business, the commissioner of the land office was called upon to determine whether the pre-emptor was entitled to a patent, he adjudged that the entry was fraudulent and therefore void, then the claimant is without a final adjudication in his favor and he must resort to other evidence to sustain his claim.

It is broadly affirmed on behalf of defendants that the land department had no power to cancel the final receipt for any reason, and that the act of the commissioner in so doing was a nullity. This is the equivalent of the proposition that the issuance of a final receipt or certificate of payment by the receiver of a local land office ends the control of the department over the land, and deprives the United States of the title thereto, which is certainly not the law. Thus it is said in *Bell* v. *Hearne*, 19 How. 262, that—

"The commissioner of the general land office exercises a general superintendence over the subordinate officers of his department, and is clothed with liberal powers of control, to be exercised for the purpose of justice, and to prevent the consequences of inadvertence, irregularity, mistake, and fraud in the important and extensive operations of that office for the disposal of the public domain."

And in *Cornelius* v. *Kessel*, 128 U. S. 456, 9 Sup. Ct. Rep. 122, it is declared that—

"The power of supervision possessed by the commissioner of the general land office over the acts of the register and receiver of the local land offices in the disposition of the public lands undoubtedly authorizes him to correct and annul entries of land allowed by them where the lands are not subject to entry, or the parties do not possess the qualifications required, or have previously entered all that the law permits. The exercise of this power is necessary to the due administration of the land department. If an investigation of the validity of such entries were required in the courts of law before they could be canceled, the necessary delays attending the examination would greatly impair, if not destroy, the efficiency of the department. But the power of supervision and correction is not an unlimited or arbitrary power. It can only be exerted when the entry was made upon false testimony, or without authority of law. It cannot be exercised so as to deprive any person of land lawfully entered and paid for. By such entry and payment the purchaser secures a vested interest in the property, and a right to a patent therefor, and can no more be deprived of it by order of the commissioner than he can be deprived by such order of any other lawfully acquired property."

In the light of these decisions of the supreme court it cannot be successfully maintained that the commissioner of the general land office had

not the power to supervise the action of the officers of the local land office; and to annul the entry made by Hanson on the ground that the same was fraudulent, and sustained by false testimony; but it is equally true that such action of the commissioner, being practically *ex parte*, is not conclusive, and that it is still open to Hanson and his grantees to establish a right to the land by proving a valid entry on his part and performance by him of the acts required to complete a pre-emption entry. On the trial below the defendants undertook to assert title to the land, as evidence of the ownership of the logs in dispute, by proving entry, the filing of the declaratory statement required by section 2262 of the Revised Statutes, and payment to the receiver. To overcome this evidence the United States offered to show that the entry so made was fraudulent, and the declaratory statement was false, and therefore no title or right to the land vested in Hanson or in his grantees, they being active participants in such fraud, such being the express declaration of section 2262 of the Revised Statutes, which reads as follows:

"Before any person claiming the benefit of this chapter is allowed to enter lands he shall make oath before the receiver or register of the land district in which the land is situated that he has never had the benefit of any right or pre-emption under section twenty-two hundred and fifty-nine; that he is not the owner of three hundred and twenty acres of land in any state or territory; that he has not settled upon and improved such land to sell the same on speculation, but in good faith to appropriate it to his own exclusive use; and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person whatsoever, by which the title which he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself; and, if any person taking such oath swears falsely in the premises, he shall forfeit the money which he may have paid for such land, and all right and title to the same; and any grant or conveyance which he may have, except in the hands of *bona fide* purchasers, for a valuable consideration, shall be null and void, except as provided in section twenty-two hundred and eighty-eight. * * *"

The evidence which the United States sought to introduce tended to prove that Hanson entered the land, not for settlement and improvement by him for his own benefit, but for the express benefit of the logging company, and under an agreement with them to convey the land as soon as it could be done, in order that the company, under guise of right, might strip the land of the timber growing thereon. Such facts, if proven, would certainly show that Hanson never acquired a valid title, legal or equitable, to the land as against the United States, and as the defendants, in support of their right to the logs cut from the land, put in evidence the entry and declaratory statement made by Hanson, it was open to the United States to prove that such entry was in violation of the statute, and the statement was false, and therefore no rights were acquired thereunder by Hanson or by his grantees, who aided in the perpetration of the fraud thus established. We hold, therefore, that it was error to rule out the evidence offered by the United States. The same should have been admitted with such other competent testimony as either of the parties might have offered upon the question of the validity of the entry made by Hanson; that question being one involved in the issues in the case, and one which it was the duty of the court to deter-

mine in order to adjudicate the ownership of the logs. The judgment of the court below is therefore reversed, and the cause is remanded with instructions to grant a new trial.