## CALDWELL ET AL. v. BUSH.

PUBLIC LANDS — JURISDICTION OF U. S. LAND DEPARTMENT — CANCELLATION OF ENTRY — TITLE OF PURCHASER FROM ENTRYMAN BEFORE PATENT — INJUNCTION AGAINST CONTINUING TRESPASSES.

1.   The land department is a tribunal established by Congress for the purpose of regulating the method of disposing of the public domain open to entry and settlement.

2.   It may decide the rights of conflicting claimants to portions of the public lands, and may cancel a fraudulent entry of public lands where patent is not issued.

3.   A desert-land entryman before the delivery of receipt upon final proof has not a title, but has the right to one upon compliance with the conditions imposed upon him.    After delivery of final receipt he has an equitable interest in the lands, the government holding the naked legal title as his trustee.

4.   The equitable interest of a desert-land entryman after final receipt may be conveyed to others, who take it with full notice of its character.

5.   U. S. land officials are not concluded by ex parte final proofs.

6.   Before issuance of patent the Secretary of the Interior may institute an inquiry upon his own motion to see whether there was fraud in the initial filing, or upon final proofs, and this authority extends to his subordinate, the Commissioner of the General Land Office.

7.   But the entryman can not be deprived of his equitable rights without due process of law, and this implies notice and a hearing, but does not require that the hearing be in the courts, or forbid an inquiry and determination of the land department.

8.   The sale or incumbrance of the equitable interest of the entryman after final proofs and payment and delivery of the final receipt is but the disposition of the equitable title, and the purchaser takes sub judice.    He takes the equitable title subject to the future action of the land department in approving or disapproving of the final proofs, or in canceling the entry on the ground of fraud.

9. Where the land department acts upon evidence, the findings of fact can not be assailed in the courts, in the absence of a clear showing that the decision was procured by fraud or imposition.

10. The Commissioner of the General Land Office having authority to cancel an entry upon the evidence adduced at a hearing ordered by him, his action can not be assailed in the courts, without positive averment and proof that he acted without notice to the entryman, or that the action of the local land officials was tainted with fraud or procured by fraud.

11. Upon matters of fact the rulings of the land department are conclusive, unless it appears that fraud was practiced either by the government officials or upon them, and the bare allegation of fraud is not of itself sufficient to warrant the inference that the officers were imposed upon or deceived.

12. The cancelation of an entry must be only after a hearing and due notice to the entryman.

13. Any informality or irregularity in the notice is waived by a general appearance in the cause.

14. If an appearance was not general, it is incumbent upon the entryman or, those claiming under him to show that fact.

15. The entryman alone is the proper party to be notified of the hearing, as the land department is not bound to take notice of a conveyance by him after final proof and before patent.

16. The provisions of Section 7 of the Act of Congress of March 3, 1891, entitled, "An Act to Repeal Timber Culture Laws and for Other Purposes," has no application to a case of an entry which was canceled prior to its passage; nor where the finding of the land department is to the effect that the entry was made for the benefit of others than the entryman.

17. An enclosure of disputed premises by a fence or fences which also encloses with such premises other lands of the claimants of the enclosure, and the lands of at least one other person who had filed and entered them at the request of such claimants, as well as public lands to which any one may have peaceable access through a gate maintained for neighborhood use, does not give to the possession of the enclosed tract the character of an exclusive possession, so as to prevent one from making a peaceable entry upon the disputed premises which were public lands, and founding a right thereon by entry in the U. S. land office, where there were no improve-

ments upon the tract entered, and he does not seek to gain by his entry the fruits of the labors of others.

18.   The peaceable entry upon the tract through a gate maintained for neighborhood convenience and accommodation was not a forcible intrusion.

19.   To warrant the interference of a court of equity in restraint of continuing trespasses, the title of the complainant must be established, or at least a superior right to the possession than is possessed by the adverse party.

[Decided June 30, 1896.   Rehearing denied December 12, 1896. Commenced in the District Court August 14, 1890.]

ERROR to District Court of Albany County, HON. RICH-ARD H. SCOTT, Judge of the. First Judicial District, presiding.

This was an action brought by Isaac P. Caldwell and Robert J. Gardinier against Lewis J. Bush to restrain repeated and continual trespasses upon a tract of land in Albany County, claimed by the plaintiffs under a purchase from a desert-land entryman after delivery of final certificate of purchase.   The defendant claimed under a homestead entry made after the concellation of the entry of the grantor of the plaintiffs.   Defendant had judgment, and the plaintiffs prosecuted error.   The material facts are stated in the opinion.

*N. E. Corthell*, for plaintiffs in error.

Between the parties, the certificate of purchase is proof of title equivalent to patent. (Laws 1890, Ch. 76, Sec. 3.) The question of title as between plaintiffs and the United States can not be drawn in question in this case because the latter is not a party.

Lands which have been entered and paid for are no longer public lands, but are private property, and as such they are no longer within the supervision. of the commissioner of the General Land Office.   The entryman becomes the full equitable owner of the land. (Wetherspoon v. Duncan, 4 Wall., 210; Carrall v. Safford; 3 How.,

460; Moore v. Robbins, 96 U. S., 530; Stark v. Starn, 6 Wall., 402; Meyers v. Croft, 13 Wall., 291; Wirth v. Branson, 98 U. S., 118; Simmons v. Wagner, 101 U. S., 260, Johnson v. Towsley, 13 Wall., 72; Burney v. Dolph, 97. U. S., 652, K. P. R. R Co. v. Prescott, 16 Wall., 603; U. P. Ry. v. McShane, 22 Wall., 444; N. P. Co. v. Traill, 115 U. S., 600.) It is not contended that the commissioner is deprived of all means of protecting the interests of the government after issuance of the final certificate. For the sole purpose of governing his. own action he may institute inquiries, take evidence, and determine whether the patent should be issued. But the act of the commissioner in rescinding or canceling the certificate is no more determinative of the right of the other party in a judicial sense than the act of a private individual in rescinding or canceling a contract he has entered into. The commissioner is not a judicial officer. The powers conferred upon him are purely executive and in most respects ministerial. The entryman whose certificate has been canceled by the commissioner is left to such remedies and relief as he can obtain in the courts. (Smith v. Ewing, 23 Fed., 741 and cases cited; Cornelius v. Kessel, 128 U. S., 456; Wilson v. Fine, 40 Fed., 52;. Davis v. Wiebold, 138 U. S.; Hardin v. Jordan, 140 id., 371.) The officials of the Land Department have persistently arrogated to themselves judicial power; but even they have conceded that an entry can not be canceled without notice to the entryman. (Houston v. Coyle, 2 L. D., 61; Slayton v. Carrall, 7 id., 200; Lundy v. Hoebel; id. 49; Lecocq cases, 2 id., 784; Neal v. McMullen, 9 id., 523; Milne v. Dowling, 4 id., 378; U. S. v. Richardson, 5 id., 253; U. S. v. Raymond, 4 id., 439.) The question of jurisdiction can be raised at any stage of the proceedings and upon slight suggestions in all tribunals (Rancho Alisal, 1 L. D., 174.)

The allegations of the petition and answer, and the findings of the court bring the entry in this case within the scope of Sec. 3, act of cong., March 3, 1891. (Supp. U. S. Rev. Stat., 2d ed., 943.)

A lawful entry or settlement upon public lands can not be acquired by intrusion or trespass upon lands in possession of others. (Atherton v. Fowler, 96 U. S., 513; Hosmer v. Wallace, 97 id., 575; Trenouth v. San Francisco, 100 id., 251; U. S. v. Williams, 30 Fed., 314; Nickalls v. Winn, 17 Nev., 189; Reinhart v. Bradshaw, 19 id., 255; Hosmer v. Duggan, 56 Cal., 261; Davis v. Scott, id., 165; Hambleton v. Duhain, 71 id., 140.) Possession may be shown or maintained by means of fences, natural barriers, or herders. (Bullock v. Rouss, 81 Cal., 583.) A complete enclosure unnecessary. (99 Cal., 135; McBrown v. Morris, 59 id., 64.) For applications of the general doctrine, see Laurendeare v. Fugelli, 1 Wash. St., 559, 5 id. 94, 632; Rourke v. McNally, 23 Pac., 62; Kendall v. Waters, 8 Pac., 510; Campbell v. Coonradt, 22, Kan., 704.) The right of plaintiffs as actual possessors is greater than that of the defendant. (2 Co. Litt., 237; 3 Black. Com. 3, 4; Mirror of Justice, C. 2 Secs. 25, 29; 2 Reeves Hist. Eng. L. 116–118.)

*John C. Baird*, for defendant in error.

The findings of the court will not be disturbed on error unless clearly erroneous. Smith D. Co. v. Casper D. Co., 5 Wyo., 510; Ketchum v. Davis, 3 id., 164; Boberg v. Prahl, id., 325.)

The Land Department is a tribunal appointed by congress to decide certain questions relating to the public lands; and its decision upon matters of fact cognizable by it, in the absence of fraud or imposition, is conclusive everywhere else. (Lee v. Johnson, 116 U. S., 48; Johnson v. Towsley, 13 Wall, 72; Warren v. Van Brunt, 19 id., 646; Shepley v. Cowan, 91 U. S., 330; Moore v. Robbins, 96 id., 530; Marquez v. Frisbie, 101 id., 473; Vance v. Burbank, id., 420; Quinby v. Conlon, 104 id., 420; Steel v. St. L. S. & M. Co. 106 id., 447; Baldwin v. Starks, 107 id., 463; U. S. v. Minor, 114 id., 233.) It is the duty of the Land Department to cancel an entry

made contrary to law. (Smith v. Custer, 8 L. D., 269, 273. See Edwards v. Darby, 12 Wheat, 206; Smythe v. Fiske, 23 Wall., 374; U. S. v. Moore, 95 U. S., 760.) Until all preliminary acts have been performed by the pre-emptor ·he has acquired no rights as against the government. (Frisbie v. Whitney, 9 Wall., 189; The Yosemite Valley case, 15 id., 77; Perry v. O'Hanlon, 11 Mo., 585; Ry. Co. v. Bryan, 8 S. & M., 268; Lamont v. Stimson, 3 Wis., 545.) Nor if an entry and certificate are procured by ·fraud. (Am. Mort. Co. v. Hopper, 64 Fed., 553.)

The commissioner may investigate and cancel an entry for cause. (Holmes v. State (Ala.), 18 So., 529; U. S. v. Steenerson, 50 Fed., 504; Harkness v. Underhill, 1 Black, 316; Grant v. Oliver, 91 Cal., 158; Grandin v. La Bar, 3 N. D., 446; Judd v. Randall, 36 Minn., 12; Marquez v. Frisbie, 101 U. S., 475; Merriam v. Bachoni, 44 Pac., 481; Thrift v. Delaney, 69 Cal., 188; Reaves v. Oliver, 3 Okl., 62.) Whether a title to land once the property of the U. S. has passed must be determined by the laws of the United States. (Wilcox v. Mc Connell, 13 Pet., 498; Irvine v. Marshall, 20 How. 558.) The courts can exercise no direct appellate jurisdiction over the officers of the Land Department. (Quinby v. Conlon, 104 U. S., 420; Shepley v. Cowan, 91 id., 330.) The cancellation of an entry is not a ministerial act which can be enjoined. (Gaines v. Thompson, 7 Wall., 347.) On its cancellation the land is restored to the public domain. (N. P. Ry. Co. v. Amacker, 53 Fed., 48.) Land Department decisions are not subject to collateral attack. (Aurora Hill C. M. Co. v. 85 Min. Co., 34 Fed., 515.) A court of ordinary jurisdiction can not by its judgment between contending claimants forestall the action of the Land Department. (Forbes v. Driscoll, 4 Dak., 336; Adams v. Couch, 1 Okl., 17; Merriam v. Bachoni, 44 Pac., 481; U. S. v. Minor, 114 U. S., 233; Marquez v. Frisbie, 101 id., 473; Steel v. Smelting Co., 106 id., 450;

U. S. v. Dudley, Johnson v. Towsley, Shepley v. Cowan, Lee v. Johnson, Quinby v. Conlon, Vance v. Burbank, supra; U. S. v. Schurz, 102 U. S., 48.)

The rule of caveat emptor applies to purchasers of an equity. (Polk's Lessee v. Wendell, 5 Wheat, 308; Vattier v. Hinde, 7 Pet., 27; Sampyreac v. U. S., id., 241; Boone v. Childs, 10 id., 179; Carroll v. Safford, 3 How., 461; Smith v. Shane, 1 McLean, 27; Dupont v. Waterman, 10 Cal., 354; Chew v. Barnett, 11 S. and R., 389; Pinson v. Ivey, 1 Yerg., 302; Craig v. Leifer, 10 Tenn., 193.) A purchaser after final proof and before patent is not protected as a bona fide purchaser. (Root v. Shields, 1 Woolw., 340; Kerr v. Watts, 6 Wheat., 550; Carrall v. Safford, 3 How., 461; Gray v. Stockton, 8 Minn., 472.) Cancellation is conclusive on the parties, in the absence of fraud, and a mortgage by a grantee of the entryman before cancellation is void. (Freese v. Rusk, 54 Kan., 274; Holmes v. State, 100 Ala., 291; State v. Buck, 46 La. Ann., 656.) The power of cancellation is not affected by a transfer to a purchaser without knowledge of the facts causing the cancellation. (Parsons v. Venzke, 4 N. Dak., 452.) A mortgagee after final receipt and before patent takes his mortgage subject to the supervisory power of the Commissioner. (Swigart v. Walker, 49 Kan., 100; Fernald v. Winch, 50 id., 79; Jones v. Myers, 2 Ida., 793; 35 Am. St., 259; Guidry v. Woods, 19 La., 334; Taylor v. Weston, 77 Cal., 534; Davidson v. Cucamonga L. Co., 78 id., 4.)

A decision of the Department of the Interior to cancel inchoate rights acquired by homestead entry is prima facie correct; and one assailing its correctness must show affirmatively that it is illegal and unauthorized. (Homes v. State, 14 So., 51; Parsons v. Venzke, 4 N. Dak., 452.) The Congressional Act of 1891 is not applicable, as the entry was canceled two years prior to the enactment.

There was no evidence to show a wrongful, forcible intrusion, but, on the contrary, the entry was peaceable and rightful.

GROESBECK, CHIEF JUSTICE.

This was an action brought by the plaintiffs in error in the district court for Albany County, to, in effect, restrain the defendant from continuing trespasses upon a tract of one hundred and sixty acres of land in that county. The plaintiffs claim title under a final certificate of purchase from the United States issued to one Simon Bales, a desert-land entryman, for lands embracing the lands in controversy, and by conveyance from Bales to plaintiffs. They also claim to be in actual possession of the land in controversy, and that defendant pretending that the title of plaintiffs has been avoided by the cancellation of the entry of their grantor, Bales, and that he has obtained a right through his homestead filing on said land, is guilty of forcible, repeated, and continuing trespasses upon the land to the permanent and irreparable injury of the plaintiffs. The defendant in his answer and cross petition admits the issuing of the final certificate of purchase to the grantor of plaintiffs, the conveyance by him of the land to the plaintiffs, the assertion of his own claim and his entry upon the land, and that he continues and intends to continue in possession of said land under his homestead entry thereon. He further sets up that after the delivery of the final certificate to Bales the grantor of the plaintiff, the commissioner of the General Land Office, upon the report of a special agent, held the entry of Bales for cancelation, and after notice to the entryman, instituted a hearing upon which certain findings were made by the Register and Receiver of the U. S. Land Office, at Cheyenne, Wyo., to the effect that the land had not been irrigated, that the entryman, Bales, did not own a sufficient water right for the purpose of irrigating the tract filed on by him, that the entry was not for his use, but for the use of the plaintiffs, that the land was natural meadow land, and was not subject to entry under the desert-land act; and that thereupon, the said local land officers decided that the entry was fraudulent and void, and recommended the cancellation thereof.

The answer and cross petition further alleges that the said Commissioner of the General Land Office, upon a review of the evidence and findings of the local land officers, approved the same, and cancelled the certificate of purchase; and that after the cancellation of the desert-land entry, the defendant, Bush, made a homestead filing on 160 acres included in the desert-land entry of Bales, and entered the lands in controversy by virtue of said filing.

This pleading further sets up that the hearing before the local land office was made upon the application of Bales, the desert-land entryman and his grantees, the plaintiffs herein, who were notified of the time and place of said hearing; that Caldwell, one of the plaintiffs, was present at the time of said hearing, and that Messrs. Lacey & Riner appeared as attorneys for Bales, the original entryman.

The reply denies that the application for such hearing was made by the desert-land entryman and his grantees; denies notice of the hearing; denies the truth of the findings of the Register and Receiver of the land office; alleges that the evidence upon which said findings were made was false and fraudulent, and that the officials of the land office were thereby fraudulently imposed upon, deceived, and misled in their conclusions. In support of the petition, the reply further alleges an "exclusive," peaceable and actual possession and occupation of the lands by the plaintiffs and their grantor, and that they have at all times enclosed them with a substantial fence since September 14, 1884, and for that reason, the said lands were not subject to entry. Other new matters set up in the reply, as it is termed in the brief, are waived by counsel for plaintiffs in error as not pertinent to the present inquiry.

The case was finally heard upon the pleadings and the evidence by the trial court, and after its refusal to find specifically certain facts requested by the plaintiffs, it made its findings of fact and conclusions of law thereon, and rendered judgment and decree for the defendant,

that the plaintiffs take nothing by the action, and that the defendant recover costs. A motion for a new trial was made and overruled by the court, and the cause is before us on the pleadings, and a bill of exceptions containing the evidence.

The plaintiffs in error, who were plaintiffs below, contend that the determination of the case rests upon four propositions, any one of which, if established, is sufficient to maintain the position of the plaintiffs in error and to warrant a reversal: 1. The Commissioner of the General Land Office has no power to cancel a final certificate of purchase in the sense of judicially determining the rights of the holder. 2. The proceedings which resulted in the pretended cancellation of the desert-land entry were without jurisdiction for want of notice. 3. That the desert-land entry is within the protection of section 7 of the Act of Congress of March 3, 1891, entitled, "An Act to Repeal Timber Culture Laws and for Other Purposes" (Sup. Rev. Stat. U. S., 2d ed., p. 943), and therefore beyond the power of the Commissioner of the General Land Office to affect it in any manner. 4. That the entry of the defendant upon the land in controversy was a forcible intrusion and trespass upon the actual possession and enclosure of the plaintiffs, and that the defendant by such entry could not gain any rights whatever in the land in controversy. These propositions will be disposed of in their order.

1. There can be no doubt now, after repeated decisions of the Federal courts, followed by the State courts, that the land department is a tribunal established by Congress for the purpose of regulating the method of disposing of the public domain open to entry and settlement. It may decide the rights of conflicting claimants to portions of the public lands, and is also empowered to cancel a fraudulent entry of public lands allowed by the register and receiver of the local land office or other officials of the land department, upon false proofs of settlement, occupancy, and improvement, and undoubtedly of their rec-

lamation of desert lands, where patent is not issued, and where the legal title to the land is still in the government. This was decided in an early case, which has been frequently sanctioned in later decisions. (Harkness v. Underhill, 1 Black, 316, 325, followed in the recent case of Orchard v. Alexander, 157 U. S., 372.) The sovereign owner of these lands may prescribe rules for the acquisition of title to any portion of the public domain by its citizens, and for parting with its title thereto, and has so provided by many legislative acts by creating a department to take initial proof of the rights of claimants to the bounty of the government. To secure the title to lands under the desert-land laws, there must be proof that the land is desert in character, and that it has been reclaimed from such condition. This is as necessary as to make the payment for the lands. It is part of the consideration moving to the government that the land shall be unfit for agriculture in its natural state, and has been reclaimed from its barren condition by irrigation and cultivation. The entryman, when he has fully reclaimed the land and made final proof thereof to the satisfaction of the land department, is entitled to a patent certificate, as it is conveniently termed. Prior to the delivery of this receipt, the entryman has not a title, but the right to one, upon compliance with the conditions imposed upon him. After its delivery, he has an equitable interest in the lands, the government holding merely the naked legal title as his trustee. This equitable interest may be conveyed to others, who take it with full notice of its character. But the land officials are not concluded by the ex parte final proofs so made. Even after patent is issued, the government can institute suit in the courts to set it aside on the ground of fraud in initiating or completing the entry. Before the issuance of the patent, the Secretary of the Interior may institute an inquiry, upon his own motion, where the matter has been called to his attention, to see whether there was fraud in the initial filing or upon the final proofs, and this authority undoubtedly extends to

his subordinate officer, the Commissioner of the General
Land Office.   This supervisory power of these chiefs of
the land department can not now be seriously questioned.
The whole matter is reviewed in Orchard v. Alexander,
supra, and maintains this view.   It is not necessary to
issue the patent first and then contest the right in the
courts, where fraud or fatal defects in the proceedings
appear.   The supervising officer is not obliged to sit quietly
and allow a proceeding to be consummated, which it
would immediately be his duty to take steps to annul.
This power of reviewing and setting aside the action of
the local land officials is not arbitrary and unlimited.
(Cornelius v. Kessel, 128 U. S., 456.)   It does not pre-
vent judicial inquiry.   (Johnson v. Towsley, 13 Wall.,
72.)   The party making proofs, accepted by the local land
officers, paying his money for the land and receiving a
receipt therefor, acquires an interest of which he can not
be arbitrarily dispossessed.   His interest is subject to local
and State taxation.   (Carroll v. Safford, 3 How., 441;
Witherspoon v. Duncan, 4 Wall., 210.)   The legal title
is held in trust for him by the government, and he can
not be deprived of his equitable rights without due proc-
ess of law, and this implies notice and a hearing, but
does not require that the hearing must be in the courts, or
forbid an inquiry and determination of the land depart-
ment.   (Orchard v. Alexander, supra.)

While this equitable interest of the entryman, after final
proofs and payment, upon final receipt is subject to sale,
or incumbrance, it is but the disposition of the equitable
title and the purchaser takes sub judice.   He takes the
equitable title subject to the future action of the land
department in approving or disapproving of the final
proofs, or in cancelling the entry on the ground of fraud.
The doctrine of caveat emptor applies.   Smith v. Custer,
8 L. D., 269; Marquez v. Frisbie, 101 U. S., 473; Vance
v. Burbank, id., 473; Quinlan v. Conlan, 104 U. S., 420;
Shepley v. Cowan, 91 U. S., 330; Merriam v. Bachioni
(Cal.), 44 Pac., 481; Grandin v. La Bar, 3 N. D., 446;

Judd v. Randall, 36 (Minn.), 12; Holmes v. State (Ala.), 14 Southern, 51; Holmes v. State, 100 Ala., 291; Jones v. Myers, 2 Idaho, 793; Root v. Shields, 1 Woolworth, 340; Kerr v. Watts, 6 Wheat., 550; U. S. v. Steernerson, 50 Fed. 504, 1 C. C. A., 552; Amer. Mtge. Co. v. Hopper, 64 Fed., 553.

The Commissioner of the General Land Office had authority to cancel the entry of Bales, the grantor of the plaintiffs, upon the evidence adduced at the hearing ordered by him, and this action can not be assailed by the courts, without positive averment and proof that he acted without notice to the entryman, or that his action or the action of the local land officials was tainted with fraud or procured by fraud.

Where the land department acts upon evidence, the findings of fact can not be assailed in the courts, in the absence of a clear showing that the decision was procured by fraud or imposition. Mc Harry v. Stewart (Cal.), 35 Pac., 141 and cases there cited, affirmed in Stewart v. Mc Harry, 159 U. S., 643; Lee v. Johnson, 116 U. S., 48. Upon matters of fact, the findings of the department are conclusive. The courts can not exercise any direct appellate jurisdiction over the rulings of the land officers or of their superiors in their department in land matters, nor can they reverse or correct them in a collateral proceeding between the parties. Quinby v. Conlan, 104 U. S., 420; Warren v. Van Brunt, 19 Wall., 646; Shepley v. Cowan, 91 U. S., 330; Moore v. Robbins, 96 U. S., 530; Vance v. Burbank, 101 U. S., 514; Steel v. St. Louis Smelting Company, 106 U. S., 447; Baldwin v. Stark, 107 U. S., 463; U. S. v. Minor, 114 U. S., 233; Barden v. Railroad Co., 154 U. S., 288; Fernald v. Finch, 50 Kan., 79; Freese v. Rusk, 54 (Kan.), 274. Perhaps the rule is as well stated in the case of Shepley v. Cowan, 91 U. S., as in any case coming before the great tribunal of last resort: "The officers of the land department are specially designated by law to receive, consider, and pass upon proofs presented with respect to settlements upon

the public lands, with a view to secure rights of pre-
emption.    If they err in the construction of the law appli-
cable to any case, or if fraud is practiced upon them, or
they themselves are chargeable with fraudulent practices,
their rulings may be reviewed and annulled by the courts
when a controversy arises between private parties founded
upon their decisions; but, for mere errors of judgment
upon the weight of evidence in a contested case before
them, the only remedy is by appeal from one officer to
another of the department, and perhaps, under special
circumstances, to the President.    It may also be, and
probably is, true that the courts may furnish, in proper
cases, relief to a party where new evidence is discovered,
which, if possessed and presented at the time, would have
changed the action of the land officers; but, except in
such cases, the ruling of the department on disputed
questions of fact made in a contested case must be
taken, when the ruling is collaterally assailed, as con-
clusive.''    In this case, therefore, we can not inquire into
the correctness of the ruling of the land department upon
the hearing upon which the cancellation of the Bales
entry was based, unless it appears that fraud was prac-
ticed either by the government officials or upon them, and
the bare allegation that such was the fact, that the evi-
dence upon which the cancellation was made was false
and untrue, and thereby the register and receiver of the
land office and the commissioner of the general land
office were misled in their conclusions and decision by
them, of itself is not sufficient to warrant the inference
that these officers were imposed upon or deceived.    '' The
court does not interfere with the title of a patentee when
the alleged mistake relates to a matter of fact, concerning
which those (the land) officers may have drawn wrong
conclusions from the testimony.    A judicial inquiry as to
the correctness of such conclusions would encroach upon
a jurisdiction which Congress has devolved exclusively
upon the department.    It is only when fraud and imposi-
tion have prevented the unsuccessful party in a contest

from fully presenting his case, or the officers from fully considering it, that a court will look into the evidence. It is not enough, however, that fraud and imposition have been practiced upon the department, or that false testimony or fraudulent documents have been presented; it must appear that they affected its determination, which, otherwise, would have been in favor of the plaintiff.'' Lee v. Johnson, 116 U. S., 48. Under all the decisions of the Federal Supreme Court, we must hold that the land department can, and is bound to, cancel a final receipt or certificate, before patent issues, upon the ground of fraud in the initial entry, or in the final proofs, upon due notice to the entryman. The purchaser of the equitable title of the entryman, under the final certificate, secures by the conveyance nothing more than the equitable interest of the entryman grantor, and this is subject to the future action of the department, in canceling and suspending the entry. Of course, this cancelation ought to be, and as stated in the case of Orchard v. Alexander, supra, must of necessity be, after a hearing of which the entryman must have notice.

2. This brings us to the matter of notice. It is asserted that there was an allegation in the answer and cross-petition of the defendant that Bales, the desert-land entryman, and the plaintiffs made an application for a hearing in the matter of the cancelation of the entry of Bales, and that notice was given to all of the parties of the time and place of hearing; and that as these allegations were denied in the reply, that the burden of proof of these allegations rested upon the defendant. There was no evidence whatever upon these matters.

Pretermitting this question, and assuming that it was necessary for the defendant to have introduced proof of notice, yet it appears by the allegations of the answer and cross petition that a hearing was had, and that Bales was present by attorneys, and Caldwell, one of the plaintiffs in error, was also present in person at the hearing.

These allegations are not denied in the reply and must

be taken as true. Any informality or irregularity in the notice to the entryman or his grantors, was undoubtedly waived, by a general appearance in the cause. There is absolutely nothing to show in the record that Bales or the plaintiffs, or either of them, specially appeared, and we must presume in the absence of such showing that the hearing was had without objection on their part, and that they submitted to the jurisdiction of the local land office. and all subsequent proceedings.

It was incumbent upon the plaintiffs to show that their grantor appeared specially, if that was the case, and only for the purpose of contesting the sufficiency or want of notice. The entryman alone was the proper party to be notified of the hearing, as it is clear that the land department is not bound to take notice of any conveyance by the entryman, after final proof and before patent issues. It must be taken as admitted by the pleadings that there was a hearing, and that Bales, the entryman, and Caldwell, one of the grantees plaintiffs, were present thereat and participated therein. Parsons v. Venzke, 4 N. D., 452.

3. The act of Congress invoked has no application. Section 7 thereof, which alone relates to this case, is as follows : " And all entries made under pre-emption, homestead, desert-land, or timber-culture laws, in which final proof and payment may have been made and certificates issued, to which there are no adverse claims originating prior to final entry, and which have been sold or encumbered prior to the first day of March, eighteen hundred and eighty-eight, and after final entry, to bona fide purchasers or encumbrancers, for a valuable consideration, shall, unless, upon an investigation by a government agent, fraud on the part of the purchaser has been found, be confirmed and patented upon presentation of satisfactory proof to the land department of such sale or encumbrance." The entry of Bales was canceled about a year prior to the passage of this law, and the defendant had made his filing and entry on the premises in dispute before

its enactment. There had been an investigation by a government agent, and the hearing was had upon his report. One of the findings in the land office was to the effect that the entry was made for the benefit of the plaintiffs who purchased the land covered by the entry of Bales, and that finding would seem to take the plaintiffs out of the protection of the statute. The section is a direction to the land officials and not for the control of the courts, as the entry and sale is to be confirmed and patented upon presentation of satisfactory proof to the land department thereof, that is, that the sale was bona fide. The plaintiffs can secure no relief in the courts in this section, but must present their case to the land department. This section has been construed by one court, at least. Parsons v. Venzke, supra. The Supreme Court of North Dakota say: " At the time this act became a law, the entry in question was not in existence. It was canceled several days before. The act does not relate to such entries. Secretary Noble so ruled in case of Ross, 12 Dec. Dep. Int., 446." We follow that decision, and hold that the entry of Bales was not in existence at the time of the passage of the law, but had been canceled some time previously, and that the act invoked does not apply.

4. It is finally contended that the plaintiffs could not be disturbed in their possession "growing out of their inclosure of the lands in dispute." The findings of the court below upon this point are, in effect, that the land in controversy, together with other lands, at the time of the entry of the defendant, were situate within an inclosure, consisting of a fence in part owned by the plaintiffs and in part by strangers to the suit. The lands inclosed were claimed by plaintiffs for their exclusive use and benefit The defendant entered upon the land through a gate in the fence on the east side of the tract in dispute, situate upon the lands of strangers to the suit, which gate had been constructed for the accommodation of parties in the vicinity, and had been used by them and defendant for a long time, without objection on the part of plaintiffs.

The entry was made by the permission of the owners of
the fence wherein the gate was placed, and was a peaceable
entry and not a forcible intrusion.   These findings accord
with the evidence, except as to the claimed exclusive use
of the inclosed premises by plaintiffs.   The conclusion of
law on this point was " that the defendant had an implied
license from the plaintiffs to enter the land."   It clearly
appeared from the evidence of Gardinier, one of the
plaintiffs, that at his instance one Holliday had filed upon
certain lands in the inclosure, which appears to be directly
adjoining the tract in dispute.   The enclosure of the plain-
tiffs was not then an exclusive possession.   One of them
had invited a citizen to file on lands within the inclosure,
and he did so and entered therein.   An attempt is made
by counsel to bring this case within the rule announced in
the cases of Atherton v. Fowler, 97 U. S., 513; Hosmer v.
Wallace, 97 U. S., 575; Trenough v. San Francisco, 100
U. S., 251; U. S. v. Williams, 30 Federal 314, 315, and
certain decisions of the State courts, which it is asserted
follow the same rule that an entry and settlement upon
the public lands can not be made upon occupied, settled,
or improved lands.   The lands of the plaintiffs within
this enclosure seem from the evidence to have been used
mostly for grazing purposes, and the evidence discloses
that the tract in controversy had no improvements what-
ever upon it, either ditches upon the same, or fences
inclosing it, or buildings upon it.   It was within a
general inclosure of plaintiffs' lands, and those of at least
one person who had been invited to enter thereon by one
of them, and also of public lands, particularly the tract in
dispute.   We do not think that any court would establish
a rule that any enclosure of the public lands of great area
would serve to lead to the absorption of the public domain
by parties who are thereon without claim or color of right
to the exclusion of settlers.   Squatters' rights ought to be
protected to a reasonable extent, and the rights of those
who have expended time, money, and toil in the improve-
ment of lands which they have cultivated in good faith

under an honest belief that the title or possessory rights held by them were good, but there must be limits to the doctrine that an enclosure alone is such a possession as protects a possessory right to the public ·lands; for, otherwise, the public domain would be parceled out to the greedy and the unscrupulous, without a shadow of right, except naked possession.   Nearly all of the cases cited, where such possessory rights have been upheld, rest upon the recognition of some sort of title, under a Mexican grant or from some person or corporation, who assumed to have the perfect or inchoate title, which has been declared void by the courts.   Such parties who have in good faith acquired lands, under color of title or claim of right, or under a general license from the putative owner, have been and ought to be protected, either in payment for improvements or in a preference right to entry of the land, but the doctrine ought not to be strained to cover the unlimited inclosure of the public domain, and to shut out the sovereign owner of the soil, and those for whose benefit it holds the lands.   Although the California and Nevada decisions seem to hold rather rigidly to the rule contended for, yet there are cases which lean strongly in the other direction, protecting a peaceable entry upon inclosed lands in the possession of others.   Thus, in Whittiker v. Pendola, 78 Cal., 296–20 Pac., 680, it was held that a mere trespasser on the public lands of the government, within an inclosure erected and maintained contrary to the express provisions of the Act of Congress, "to prevent the unlawful occupancy of the public lands," approved February 25, 1885, 23 Stat. at Large, ch. 149, p. 321, can not by such occupancy prevent a homestead entry of the land by a citizen who goes peaceably upon the lands and complies with the law, and in this case, most of the demanded premises were inclosed and cultivated by the adverse party for two years before the issuance of the initial receipt, who had erected thereon a house and barn, and the rule announced in Haven v. Haws, 63 Cal., 514, that the homestead entryman had the right to make

his entry of the whole tract, notwithstanding the possession by the adverse party of the greater portion of the tract filed upon, was followed. In Goodwin v. McCabe, 75 Cal., 588, it was held that the party claiming possession as against the entryman, must be in "actual" possession, and the cases were reviewed briefly. Atherton v. Fowler, 96 U. S., 513, was referred to as holding that the land was in the actual possession of the plaintiff's testator, and that the entry of the defendant was forcible, but did not have in view the case of an entry upon an actual possession without the use of force. In Durand v. Martin, 120 U. S., 369, Martin was "in actual possession under color of title." In Quinby v. Conlan, 104 U. S., 423, the rule was stated that "a settlement could not be made on public land already occupied," and the element of force was not adverted to. In Mower v. Fletcher, 116 U. S., 381, the court said that if a party "enters into possession of land and improves and cultivates and holds it, no one by forcibly or surreptitiously getting into possession can make a pre-emption settlement," etc. So the court comes to the conclusion that the reasoning of the courts in all cases seems to forbid the invasion of the actual possession of another, whether such invasion is accompanied by force or not, and cites Brown v. McMorris, 59 Cal., 68, as supporting this view; but it states further that the rule applies only where the first party has actual, and not a mere constructive, possession. It cites also the case of Belk v. Meagher, 104 U. S., 287, relating to the possession of a mining claim, which, when located upon, although once in the possession of another, had no improvements thereon, and was not inclosed, at the time of the location, in which case the court said: "We all agree that if a peaceable entry had been made on lands which had not been enclosed or improved, a good right might have been secured." In another California case, where the lands had been inclosed, but where the "fences had become somewhat dilapidated" and were down in places where the other party entered, it

was held that the entry was lawful. Bullock v. Rouse, 81 Cal., 590. In this last-cited case, it was also held that fences and natural barriers together may constitute a sufficient inclosure to give actual possession of land, and that such possession exists even without inclosure, where the land is used for pasturage for stock, where the occupant or user of the lands employs herders to keep his stock on and other stock off the lands. In Davis v. Scott, 56 Cal., 169, a case cited by plaintiffs in error, the findings of the trial court were to the effect that the prevailing party in the suit and his grantor had "exclusive" possession of the land, and this finding was also made in Bishop v. Glassen (Cal.), 12 Pac., 258. Exclusive possession of the land in dispute in the case at bar is directly alleged in the pleadings of the plaintiffs in error.

The California decisions go to great length, and evidently forbid any entry upon lands of the government in the actual and exclusive possession of others, but these decisions have been modified by Whittiker v. Pendola, supra, announced since the passage of the Act of Congress of February 25, 1885, forbidding the unlawful occupancy of the public lands, without claim or color of right, and affirmed by the more recent decision of Kitts v. Austin, 83 Cal., 167. The Supreme Court of Washington Territory in the case of Laurendeau v. Fugelli, 1 Wash. St., 559, held that this act of Congress did not apply where the parties in possession had inclosed and "improved" the lands, claiming under a certificate from a railroad company, but this was but a mere affirmance of the act recognizing the legality of an occupancy of public lands under claim and color of right, in good faith. This is the doctrine of the Federal Supreme Court in Cameron v. United States, 148 U. S., 301, that the provisions of the Act of Congress of 1885 do not operate upon persons who have taken possession of land under a bona fide claim or color of title.

But in the case at bar, by a lawful proceeding before the land department, the rights of the plaintiffs in error to the lands were passed upon, or at least those of the grantor, in which the plaintiffs participated, and the entry of their grantor was cancelled for fraud in the initial entry and in the final proof, and this cancellation of the entry terminated all the rights of the plaintiffs in error in the lands filed upon.   In Woodruff v. Wallace, 3 Okla., 355, referring to the cancellation of a homestead entry, the court said: "The result of the cancellation upon either charge is the same.   The contract with the government is at an end.   The moment the entry is cancelled the land reverts to the government as completely as if no entry had ever been made.   No more rights remain in the individual whose entry had been cancelled than would exist if his entry had never been made.   He stands in the same relation toward the land as he would in any other matter wherein he had contracted and such contract had been revoked or completely rescinded.   In this case Woodruff lost, not only his possession, but his contingent interest in the patent, at the time his entry was cancelled." The judgment of the lower court was affirmed by a divided court, but the matters of difference were mainly upon the form of the action, one of the judges being disqualified, two of them holding that by the equitable proceeding in injunction, the court could give exclusive possession to the person successful in the contest proceedings before the land department, and two holding that the remedy was one at law, either by ejectment or forcible detainer.   The unsuccessful entryman had occupied the land since his entry thereon, until the date of the institution of the suit, had broken a portion of the land and cultivated the same, erected a house and barn thereon, and the value of the improvements was $1,000 ; yet the judgment of the trial court was sustained, where an injunctional order issued restraining the defendant from trespassing upon or interfering with the use and occupancy of the successful

claimant; and the decree required the adverse party to remove within a short time therein limited all his buildings, fencing, and portable property from the land.

In the case at bar, the trial court decreed the petition of the plaintiffs, which was in the nature of a bill in chancery, to be without equity, but did not direct that the defendant be put in possession, although this was prayed for in the answer and cross-petition.

The judgment and decree dismissed the petition, dissolved the injunction, and gave costs to the defendant. The defendant below did not complain of this decree either in the court below or in this court, and we shall not modify it.

Inasmuch as the inclosure of the disputed premises was of land held by the plaintiffs in error, and those of at least one other person, who had filed upon and entered lands adjoining the tract in controversy, at the invitation of plaintiffs, as well as of public lands to which any one might have peaceable access through a gate maintained for neighborhood use, their possession of the inclosed tract was not an exclusive possession. Such possession is evidently required where parties claim the right to public lands by reason of their inclosure and occupancy thereof. Having invited another to enter their inclosure, who was an entryman on the public lands therein, and in the same condition as the defendant, the plaintiffs are not in a position to assert an exclusive right to the possession and occupancy of the inclosed tract, by reason of their inclosure alone. There were no improvements upon the tract filed upon by the defendant, and he did not seek to gain by his entry on the premises the fruits of the labors of others.

The entry of the grantor of the plaintiffs thereon was canceled in a proceeding in which the plaintiffs appeared, as well as their grantor, and all of them are bound by such proceeding as they prosecuted no appeal, and did not exhaust their remedies before the land department. They did not hold the land in dispute under claim or color of

right when the entry was made.    The entry of the defendant was peaceable and lawful, and he disturbed no one's possession or right of possession to the land claimed by him.

The judgment of the district court for Albany County will be affirmed.

CONAWAY and POTTER, JJ., concur.

---

### ON PETITION FOR REHEARING.

GROESBECK, CHIEF JUSTICE.

This cause was decided June 30, 1896.    This is an application for rehearing.    Counsel for the plaintiffs in error urging with much force that considerable space in the original opinion was devoted to the discussion of what was conceived to be the main question involved in the case, which was disposed of largely upon cases which had not been cited or referred to in argument, and which counsel had previously no opportunity to examine, and oral argument upon the application was ordered.

All of the propositions discussed upon the original hearing, except one, are waived in the brief and argument, and counsel rests his case solely upon the proposition that the plaintiffs in error could not be disturbed in their possession growing out of the inclosure of the lands in dispute, by the defendant in error, who entered under his homestead filing upon a quarter section of land inclosed in common with other lands of the plaintiffs and another, after the desert-land entry of the grantor of plaintiffs had been canceled for fraud by the local government land officials, whose action was approved by the Commissioner of the General Land Office, and from the decision of which last-named officer, no appeal was taken.    At that hearing, the plaintiffs were present by counsel.    They now assert no claim or color of title, except that of mere naked possession, which they assert can not be invaded by the

defendant in error under his homestead entry, and whose
continued trespasses, as they are alleged to be, were
enjoined pendente lite.   We held that the possession of
plaintiffs in error of the land in dispute based on the fact
of its inclosure by themselves and others, with other lands
of their own and of the government, was not an exclusive
possession.

Another entryman was invited to enter within the
inclosure by them and did so enter, while it is sought to
exclude the defendant in error under his filing.   It is
vigorously asserted that such exclusion was proper, and
in support of this position an illustration is made of the
invitation of a guest to occupy a room in one's house, an
act that could not be construed as extending a general
invitation to the public to enter, or as an equivalent to
throwing open the doors of the dwelling to all mankind.
This illustration is not apt, as the premises inclosed in
this case were not all owned or held by claim or color of
right or title by the plaintiffs in error.   The case is more
analogous to the keeper of a common inn, who by invi-
ting one guest to enter, admits the public to the premises.
By inviting an outsider to enter within their inclosure, if
it can be called such, in view of the fact that one side of
the field had been inclosed by strangers to the suit, their
possession after such entry can not be an exclusive pos-
session to the whole tract.   To lands adjudicated not to
be their own, in a proceeding in which they appeared,
they seek to invite one and exclude another.   Such a
course, if upheld by the courts, would carry the doctrine
of the sanctity of an enclosure to an absurd length, and
permit parties to inclose large tracts of the public lands
in common with their own, and exercise such control of
the government parcels, as to admit some and exclude
others, moved by caprice or a fastidious desire to choose
their neighbors.   The cases, both State and Federal,
relied upon by plaintiffs in error, were mainly decided
upon the ground that one has no right to enter public
lands to dispossess an occupant thereof, who has in good

faith, under claim or color of title, taken possession of the land, inclosed, improved, or cultivated it. Upon the land in dispute, and upon all the lands embraced in the canceled desert entry, of which they are a part, there were no improvements whatever. We do not think the decisions in this case cited as upholding the right of plaintiffs in error can be tortured into applying to the circumstances of this case, where the right of possession to the land and adjacent lands covered by the desert-land entry of the grantor of plaintiffs in error, have been determined in a proceeding lawfully and regularly conducted by the land department, in which they participated, and from the decision of which, adverse to their grantor, affirmed by the Commissioner of the General Land Office, they took no appeal. It would seem that the doctrine that the person who has the right of possession may by peaceable entry upon the land, acquire sufficient possession of it to enable him to maintain an action for trespass against any person who being in possession at the time of his entry wrongfully continues upon the land (2 Jaggard on Torts, 686) has not been upset by the leading decisions in cases of entry upon the public lands, which will not permit an entry thereon, held under claim or color of right, or perhaps only by right of prior possession and occupancy where improvements have been made thereon, or where settlement has been effected, or where time and labor have been expended thereon by an innocent party with an honest belief that the occupant had a claim or title thereto. The view announced rather timidly, in the early case of State v. Ross, 4 Jones's Law (N. C.), 315, seems to be the true doctrine. After reviewing the apparent conflict in the British authorities, the court say: " Perhaps it will be found that the authorities may be reconciled on this distinction. One having a right of entry, may, at common law, use force, provided it does not amount to a breach of the peace; whereas one not having a right of entry is guilty of the trespass, indictable at common law, if he enters with a strong hand, under circumstances cal-

culated to excite terror, although the force used does not amount to a breach of the peace.'' Although this résumé of the law is offered merely as a suggestion, it is undoubtedly in harmony with the American cases. See notes to the case of State v. Ross, supra, 68 American Dec. 754, et seq., and particularly the case of Low v. Elwell, 121 Mass., 309.

There can be no question under the testimony that the entry was peaceably made upon the premises; that no inclosure of the plaintiffs in error was removed or broken down to make the entry, for it was made through a gate in a fence, belonging to strangers to this suit, serving to inclose on one side the lands inclosed by plaintiffs in error, and none of the circumstances of the entry show that the acts of the defendant in error were of such a nature as to excite terror, or were done with a strong hand. He did not forcibly dispossess the plaintiffs in error, neither did he obtain or seek to obtain the fruits of their labor or that of any person by his peaceable entry. His permission to enter was by the license of the government, the sovereign owner of the soil, which had, in accordance with law, through its duly constituted and authorized officials, declared the land open to entry, after canceling the entry of the grantor of the plaintiffs in error, in a proceeding in which they participated, and having further allowed the entry of the defendant upon the land as vacant land, and open to settlement.

To warrant the interference of a court of equity in restraint of continuing trespasses, the title of the complainant must be established, or at least a superior right to the possession than is possessed by the adverse party, and if title to the locus in quo is in doubt, the injunction, if granted, should only be temporary, until the title can be determined at law. 1 High on Injunctions, Sec. 701. In this case, the title had been determined by a tribunal clothed with full jurisdiction to try and determine the matter, before the government had parted with its legal estate, a right, as in the original opinion in the case at

bar, was shown to be undisputed, before the issuance of patent, as well as after its delivery in a suit to cancel it for fraud in the initial or final entry. It is difficult to see what protection a court of equity could afford to the plaintiffs in error in this suit by an injunction to restrain continuing trespasses on the lands, after the defendant in error had established possession, under the evidence adduced at the trial. For the reasons herein given, as well as those set out in length in the original opinion, the judgment of the district court for Albany County will be affirmed, and the petition for rehearing denied.

CONAWAY and POTTER, JJ., concur