STIMSON LAND CO. v. HOLLISTER.

(Circuit Court, D. Washington, N. D. March 10, 1896.)

1. ENTRY OF PUBLIC LAND—FRAUDULENT CANCELLATION.
   The action of the land department in canceling an entry is not binding, if based on testimony extorted by threats of criminal prosecution, and promises of immunity in consideration of testimony satisfactory to the agent of the department.

2. SUSPENDED ENTRIES—TRIAL IN LAND OFFICE.
   Rev. St. §§ 2450, 2451, require that cases of suspended entries shall be tried according to the principles of equity, and under regulations to

be prescribed by the secretary of the interior, the attorney general, and the commissioner of the land office, and also that every such adjudication shall be approved by the secretary of the interior and the attorney general, acting as a board.

Bill by the Stimson Land Company against John C. Hollister.

Jenner, Legg & Williams, for complainant.
George H. Williams, for defendant.

HANFORD, District Judge. The pleadings and proofs in this case show that on July 5, 1884, George W. Smith made entry in the United States district land office at Olympia of the N. E. ¼ of section 24, township 37 N., of range 4 E., containing 160 acres, under the act of congress approved June 3, 1878, entitled "An act for the sale of timber lands in the states of California, Oregon, Nevada and in Washington Territory" (1 Supp. Rev. St., 2d Ed., 167), and paid therefor the sum of $400, besides fees amounting to $10, and there was issued by the receiver of said land office a certificate of said entry and payment. Afterwards, by mesne conveyances from said Smith, the said land was conveyed to the complainant, so far as the said entryman and his grantees were able to convey the title. In the month of January, 1886, a special agent of the land department of the United States reported to the general land office that the entry of said land by Smith, and also a number of other timber entries and pre-emption claims of land in the same vicinity, had "been made in the interest of the Muskegan Mill Company"; and on the 19th day of May, 1886, the commissioner of the general land office, by a letter to the register and receiver of the district land office, ordered that all of said entries, including the entry of Smith, should be held for cancellation; and subsequently, in proceedings before the register and receiver of the district land office, initiated and conducted by officers of the land department, testimony was taken as to the facts connected with the several entries so reported to have been made in the interest of the Muskegan Mill Company, and the character of the land, and other facts affecting the validity of said entries; and, as the result of said investigation, all of said entries, including the entry of Smith, were, by the decision of the commissioner of the general land office and the secretary of the interior, canceled, and the money paid by Smith has been retained by the United States as though it were forfeited. Since the cancellation of Smith's entry, the defendant has obtained a patent from the United States, conveying to him the title to the same land. The complainant claims now to be the true owner of said land, notwithstanding the action of the land department in canceling Smith's entry, and issuing the patent to the defendant; and the object of this suit is to obtain a decree declaring the complainant to be the owner of the land, and that the defendant holds the title as a trustee, and requiring him to convey said title to the complainant. In the bill of complaint, and argument made on behalf of the complainant, the charge is boldly made that the action of the land department in canceling all of the entries referred to was fraudulent, in this: that by threats and intimidation they prevailed upon the

several entrymen to appear as witnesses for the government before the register and receiver of the land office, and, in giving their testimony, to give a false coloring to the facts, and also to refuse to answer questions propounded by the representatives of purchasers of the lands, and that the decision was based upon testimony so given under duress. And it is proven by uncontradicted testimony that an agent of the general land office read to the several entrymen, before their testimony was given, the following letter from the assistant commissioner of the general land office:

"Refer in reply to this initial: 'P.'

"Department of the Interior, General Land Office.

"Washington, D. C., May 19th, 1886.

"James M. Carson, Special Agent G. L. O., Olympia, W. T.—Sir: Under date of Jany. 26 and 27, 1886. John G. Thompson, late special agent, reported the following pre-emption and timber-land cash entries in township 27 N., range 4 E., as having been made in the interest of the Muskegan Mill Company, viz.: Timber, cash, No. 8,667, July 3, 1884, James D. Hannegan, W. 2 of E. 2 Sec. 34. Witnesses, Charles M. Park and Magnin L. Martin; post-office address, Whatcom, W. T. * * * Timber, cash, No. 8,677, July 5, 1884, George W. Smith, N. E. 4 Sec. 24. Witnesses, Gustaf Hall and Edvart Smith, Whatcom, W. T. * * * Pre., cash, No. 8,684, July 7, 1884, Van W. Chipman, N. E. 4 Sec. 28. Witnesses, Charles M. Park and Thomas J. Lyon, Whatcom. W. T. * * * Pre., cash, No. 8,833, Aug. 23, 1884, George C. Curtis, S. W. 4, Sec. 34. Witnesses, Michael Anderson and William Carley. Whatcom, W. T. * * * Pre., cash, No. 8,707, Charles M. Park, July 12, 1884, E. 2 of E. 2 Sec. 34. Witnesses, Thomas J. Lyon and Van W. Chipman, Whatcom, W. T. * * * By letter of this date to the local officers, said entries have been held for cancellation. One other entry in this lot, Mr. Thompson did not report upon, viz. timber, cash, No. 8,673, of Edvart Smith, for lots 3 & 4 & S. 2 N. W. 4 Sec. 3, T. 36 N., R. 4 E.; and on May 6th, inst., you were directed to investigate and report upon the same as early as practicable. As you are in possession of Mr. Thompson's papers, I presume you have the data upon which he based these reports. All the lands involved were transferred, on the same day—or shortly after—entry was made, to Stimson and Park, who are members of, or agents for, the Muskegan Mill Company; and Orlando A. Thompson appears to have been instrumental in procuring parties to make entries. You will at once confer with the district attorney, and lay all the facts before him, for the purpose of having Stimson, Park, and Thompson, and any other principals, prosecuted for conspiracy and subornation of perjury, and the entrymen should be prosecuted for perjury. Any of the entrymen who will testify for the government should not be prosecuted. If any further investigation is deemed necessary by the district attorney, you will follow his suggestions.

"Respectfully,            S. M. Stockslager, Asst. Commissioner."

By means of this letter, and by threats of criminal prosecutions and promises of immunity as therein suggested, the agent of the land department to whom the letter was addressed induced Chipman, Curtis, and Park, and others named in said letter, to appear at the district land office, and give testimony under his guidance, and in some instances they refused to answer questions propounded upon cross-examination which were objected to by said agent.

The testimony upon which the case has been submitted does not show specifically that evidence impeaching the Smith entry was obtained in the manner above indicated, nor that there was any evidence to justify cancellation of said entry; but it does show that other entries involved in the same hearing, which were in fact

lawful, were canceled, and that all the entries and pre-emption claims referred to in the letter of the assistant commissioner of May 19, 1886, met the same fate; and the inference is fairly deducible that the decision as to each of the entries involved was affected by testimony shown to have been extorted by threats of criminal prosecutions, and promises of immunity in consideration of testimony satisfactory to the agent. And it is further shown by the uncontradicted evidence that the taking of testimony before the register and receiver of the land office was continued during a period of about six weeks, and that during that period indictments were obtained in the district court of the Second judicial district of Washington Territory, holding terms at Tacoma, against Orlando A. Thompson for perjury, and against Thomas D. Stimson, Hugh Park, and Orlando A. Thompson for unlawfully conspiring together to defraud the United States, which indictments were founded in part upon the testimony of persons who had been threatened with prosecution in the above letter from the assistant commissioner of the general land office, and who were, previous to testifying before the grand jury, informed of the contents of said letter by the same agent of the general land office. A demurrer to the indictment for perjury was sustained by the court, and the conspiracy case was dismissed on motion of the United States attorney, in compliance with a letter from the attorney general of the United States, dated March 8, 1889, reciting that the secretary of the interior "states that he sees no reason for the maintenance of criminal proceedings against Stimson and Park."

The testimony and the record in this case fails to disclose any foundation whatever for the original attack upon the validity of the several entries referred to, on the ground that the same were made in the interest of the Muskegan Mill Company. The complainant does not deraign title through that firm or corporation, and there is no ground for an inference that the complainant or its grantors were at any time connected with said company. Whatever may have been the motive of the officers and agents of the land department, the methods resorted to for the purpose of obtaining the evidence upon which they assumed to cancel the entries and confiscate the money paid by the several entrymen were unlawful, and the same constituted actual and legal fraud, sufficient to vitiate the entire transaction. The decisions of the land department as to questions of fact affecting rights claimed under the public land laws are not necessarily conclusive. In all the numerous cases which have been adjudged, the principle is recognized that decisions obtained by fraud, or based upon perjury, are not to be held by the courts to bind the parties against whom such attempts to defraud may have been made. U. S. v. Minor, 114 U. S. 233–244, 5 Sup. Ct. 836. The defendant's claim to the land was not initiated by an application to contest Smith's entry, but had its inception after the consummation of the proceedings to cancel said entry. The case in the land department must therefore be regarded as one to determine questions affecting a suspended entry, of the character contemplated by section 2450, Rev. St., which reads as follows:

"The commissioner of the general land office is authorized to decide upon principles of equity and justice, as recognized in courts of equity, and in accordance with regulations to be settled by the secretary of the interior, the attorney general, and the commissioner, conjointly, consistently with such principles, all cases of suspended entries of public lands and of suspended preemption land-claims, and to adjudge in what cases patents shall issue upon the same."

Such cases are not left by the law to be finally determined by the land department under the general provisions of the statute, giving to the secretary of the interior and the commissioner of the general land office control of the administration of the public land business, and vesting those officers with the powers of a special tribunal to determine disputed questions of fact. On the contrary, the law requires cases of suspended entries to be tried according to the principles of equity, and under definite rules of procedure to be prescribed, and constitutes a different special tribunal invested with power to adjudicate in such cases. Section 2451, Rev. St., reads as follows:

"Every such adjudication shall be approved by the secretary of the interior and the attorney general, acting as a board; and shall operate only to divest the United States of the title of the lands embraced thereby, without prejudice to the rights of conflicting claimants."

The case of Pierce v. Frace, 157 U. S. 372–386, 15 Sup. Ct. 635, cited and relied upon by counsel for the defendant, appears from the statement of facts in the report to have been contested between rival claimants in the land office, and in that respect differs from the case at bar, which difference perhaps accounts for the failure of the supreme court to notice sections 2450, 2451, in its decision, wherein the authorities and the statutes relating to the organization and power of the general land office are referred to, and reviewed at considerable length. Whether that is so or not, the sections above quoted are upon the statute book; and no decision has been called to my attention which seems to afford any ground for denying the force thereof, nor the applicability thereof to the facts of this case. The argument of the defendant on this point seems to be confined to a mere assertion that because no preceding case has been cited in which effect has been given to this law, and because the courts have many times decided that the secretary of the interior and the commissioner of the general land office have the power to cancel entries of public land allowed by the local land officers, therefore this court should ignore sections 2450, 2451, in this case. I am not impressed with the soundness of this argument, although it must be admitted that the failure of the courts hitherto to notice sections 2450, 2451, except in the one case of Foley v. Harrison, 15 How. 433, does seem strange. As the decision against the validity of Smith's entry has not been approved by the secretary of the interior and the attorney general, acting as a board, it cannot be regarded as a lawful decision, nor effective to deprive Smith and his vendees of the right to have a patent for the land, as provided by the statute under which the entry was made. The complainant, to obtain relief as prayed in the bill, must show a good right, affirmatively, derived lawfully from one

v.75F.no.10—60

who had acquired a complete, vested right to the land in accordance with the provisions of the law under which his entry and purchase from the government was made. Mill Co. v. Brown, 54 Fed. 987, 59 Fed. 35. The necessary facts have been established in this case by the averments of the bill not controverted by the answer, and by evidence fully sustaining the allegations which the answer does put in issue. The answer does not state, and the evidence does not show, any facts to impeach the validity of the entry, except the irregular and unauthorized proceedings of the land department. I hold, therefore, that the receiver's certificate issued to Smith is sufficient evidence of a perfect and vested right to the land, and the plaintiff is entitled to the relief prayed for. Let there be a decree accordingly.