## DILLER v. HAWLEY et al.

(Circuit Court of Appeals, Ninth Circuit. June 28, 1897.)

### No. 329.

1. PUBLIC LANDS—CANCELLATION OF ENTRY.

The land department of the government may cancel an entry of public lands when its officers are convinced, on a proper showing, and after a hearing, that the same was fraudulently made.

2. SAME—POWERS OF SECRETARY OF INTERIOR.

The secretary of the interior, acting alone, may review a judgment of the commissioner of the land office as to an entry in a local land office, and order the entry, if shown to be fraudulent, to be canceled; Rev. St. §§ 2450, 2451, requiring the adjudication in certain cases to be made by a board consisting of the secretary of the treasury, attorney general, and secretary of the interior, having no application to the review of decisions as to entries in the local land offices.

3. SAME—BONA FIDE PURCHASERS.

As purchasers of land from an entryman before the issuance of a patent obtain only an equitable title, they take subject to the power of the land department to cancel the entry upon a proper showing, and are not entitled to protection as bona fide purchasers.

4. SAME—FINDINGS OF FACT CONCLUSIVE.

The finding of the secretary of the interior as a fact that an entry was made for speculative purposes, and not in good faith for the exclusive use and benefit of the entryman, is conclusive; as it is only questions of law involved in decisions of the land department that are reviewable in the courts.

5. SAME—ENTRY MADE FOR SPECULATIVE PURPOSES.

The land department is authorized to cancel an entry where the evidence is sufficient to justify the inference that there was some prior understanding, though not directly shown, between the entryman and others, that his acts should inure to their benefit, and that he applied to purchase the land on a speculation, and not in good faith to appropriate it to his own exclusive use and benefit.

Appeal from the Circuit Court of the United States for the District of Washington, Northern Division.

This suit was brought by Ravaud. K. Hawley and Russel A. Alger, the appellees, against L. Edgar Diller, the appellant herein, to compel the appellant to convey certain land to them, which had been conveyed to him by a United States patent. On the 30th day of April, 1883, the land involved in this suit, to wit, the N. W. ¼ of N. E. ¼, and N. ½ of N. W. ¼, of section 13, and the S. E. ¼ of the S. W. ¼ of section 12, all in township 36 N., of range 3 E., Willamette meridian, in the county of Skagit, territory (now state) of Washington, was unoccupied and unappropriated surveyed public land of the United States, and was subject to entry and purchase under the timber and stone act of congress of June 3, 1878 (20 Stat. 89). On said day one Henry C. Hackley made application to purchase the land from the United States, under said act, in the local land office at Olympia, Washington territory, and paid to the receiver of the land office the sum of $400,—that being the amount prescribed by law as the purchase price of the same,—and then and there received a certificate of the receipt from said land office, known as the "final" or "duplicate" receipt. On the same day said Hackley, for a valuable consideration, sold, assigned, and transferred said receipt and certificate, and the land therein described, to one Stephen S. Bailey, and duly made, executed, and delivered to said Bailey a good and sufficient warranty deed, conveying said property to said Bailey. On December 29, 1887, Stephen S. Bailey and his wife, for a valuable consideration, sold, assigned, and transferred all their right, title, and interest in and to said land to the appellees herein, and then and there made, executed, and delivered to said appellees a good and sufficient warranty deed therefor. On the 9th of August, 1888, the commissioner of the general land office suspended the entry of said Henry C. Hackley, and held the same for cancellation, and ordered the register and receiver of the United States land office at Seattle to notify said entryman and said transferees that they would be allowed 60 and 10 days from the date of said notice within which to apply for a hearing to show cause why said entry should not be canceled. On August 23, 1888, the register and receiver notified Hackley and his transferees of the action of the commissioner. The transferees thereafter applied for a hearing, which was granted, and the hearing had. The register and receiver, after such hearing, were divided in opinion. The testimony taken at said hearing, with the records in the case, were transmitted to the commissioner of the general land office. The commissioner decided that said lands should be passed to patent. The secretary of the interior thereupon ordered the papers in said case to be transferred to his office, and, after a consideration of the same, he ordered that said entry be canceled, and directed the commissioner of the general land office to cancel said entry on the records of the land department. On November 21, 1893, the commissioner ordered the timber entry of Hackley canceled, because said entry was made in the interest of another person, and not for the exclusive benefit of the entryman. On May 10, 1895, said land being then on the records of the land office of the United States as a part of the public domain, L. Edgar Diller, appellant herein, made application to the register and receiver to make, and did make, entry of said land, and purchased the same on July 25, 1895, and received from the government a patent therefor under the said timber and stone act of June 3, 1878. Thereafter appellees brought this suit in the circuit court of the United States, praying that said L. Edgar Diller be decreed to convey to said appellees herein the title to said land. Upon a hearing the court entered a decree in favor of complainants (Hawley v. Diller, 75 Fed. 946), from which decree this appeal is taken.

F. Starr Griffith, for appellant.
Chas. K. Jenner, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts). 1. Did the land department have jurisdiction to cancel the entry of Henry C. Hackley? This question must be answered in the affirmative. In Mortgage Co. v. Hopper, 12 C. C. A. 293, 64 Fed. 553, this court had

occasion to examine many of the authorities cited by the respective counsel herein. The same questions here urged were there elaborately discussed. In the course of that opinion the court said:

"We are of opinion that the general trend and logical effect of the decisions of the supreme court of the United States virtually establish the following propositions concerning the disposition of the public lands of the United States, viz.: (1) That the land department of the government has the power and authority to cancel and annul an entry of public lands when its officers are convinced, upon a proper showing, that the same was fraudulently made; (2) that an entryman upon the public lands only secures a vested interest in the land when he has lawfully entered upon and paid for the same, and in all respects complied with the requirements of the law; (3) that the land department has control over the disposition of the public lands until a patent has been issued therefor, and accepted by the patentee; and (4) that redress can always be had in the courts where the officers of the land department have withheld from a pre-emptioner his rights, where they have misconstrued the law, or where any fraud or deception has been practiced which affected their judgment and decision." Bell v. Hearne, 19 How. 252; Gaines v. Thompson, 7 Wall. 347; Litchfield v. Register and Receiver, 9 Wall. 575; Secretary v. McGarrahan, Id. 298; Johnson v. Towsley, 13 Wall. 72; Myers v. Croft, Id. 291; Yosemite Val. Case, 15 Wall. 77; Shepley v. Cowan, 91 U. S. 330; Moore v. Robbins, 96 U. S. 538; Marqueze v. Frisbie, 101 U. S. 473; Quinby v. Conlan, 104 U. S. 420; Smelting Co. v. Kemp, Id. 636; Lee v. Johnson, 116 U. S. 48, 6 Sup. Ct. 249; Steel v. Refining Co., 106 U. S. 447, 1 Sup. Ct. 389; Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122; U. S. v. Steenerson, 1 C. C. A. 552, 50 Fed. 504; Germania Iron Co. v. U. S., 7 C. C. A. 256, 58 Fed. 334; Mill Co. v. Brown, 7 C. C. A. 643, 59 Fed. 35; Swigart v. Walker (Kan. Sup.) 30 Pac. 162.

The principles thus announced are fully sustained by the decision of the supreme court in the case of Orchard v. Alexander, 157 U. S. 372, 15 Sup. Ct. 635, where the court held that the commissioner of the general land office may direct the proper local land officer to hear and pass upon charges of fraud, and the final proof of the pre-emption claim upon which the requisite cash entry has been paid, and has jurisdiction to review the judgment of the local land officer in respect thereof; and the secretary of the interior has jurisdiction to review such judgment of the commissioner, and to order such an entry, shown to be fraudulent, to be canceled.

The court, after referring to the statutes and to numerous authorities, and quoting from Harkness v. Underhill, 1 Black, 316, 325, Hosmer v. Wallace, 97 U. S. 575, 578, and Knight v. Association, 142 U. S. 161, 167, 12 Sup. Ct. 258, said:

"We have made these somewhat extensive quotations from prior decisions in order to show the rulings of this court since the act of 1836 in favor of the power of the general officers of the land department to review and correct the action of the subordinate officials in all matters relating to the sale and disposal of public lands. * * * Of course this power of reviewing and setting aside the action of the local land officers is, as was decided in Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122, not arbitrary and unlimited. It does not prevent judicial inquiry. Johnson v. Towsley, 13 Wall. 72. The party who makes proofs which are accepted by the local land officers, and pays his money for the land, has acquired an interest of which he cannot be arbitrarily dispossessed. His interest is subject to state taxation. Carroll v. Safford, 3 How. 441; Witherspoon v. Duncan, 4 Wall. 210. The government holds the legal title in trust for him, and he may not be dispossessed of his equitable rights without due process of law. Due process, in such case, implies notice and a hearing. But this does not require that the hearing must be in the courts, or forbid an inquiry and determination in the land department."

The entire opinion is instructive. Its reasoning is sound, clear, and conclusive upon the question here involved. This opinion is referred to and followed with approval in Parsons v. Venzke, 164 U. S. 89, 17 Sup. Ct. 27.

2. It is argued upon behalf of the appellees that the decision of the secretary of the interior ordering the cancellation of the entry is null and void. This contention is sought to be maintained upon the ground that sections 2450 and 2451 of the Revised Statutes require the adjudication to be made by a board consisting of the secretary of the treasury, attorney general, and secretary of the interior, and that the secretary of the interior, without a determination by the board, could not lawfully cancel the entry. These sections must be read and construed with reference to the other provisions of the act, and especially with reference to the provisions of section 2457, which reads as follows:

"The preceding provisions from section 2450 to section 2456, inclusive, shall be applicable to all cases of suspended entries and locations which have arisen in the general land office since the 26th day of June, 1856, as well as to all cases of a similar kind which may hereafter occur, embracing as well locations under bounty land warrants as ordinary entries or sales, including homestead entries and pre-emption locations or cases; where the law has been substantially complied with, and the error or informality arose from ignorance, accident, or mistake which is satisfactorily explained; and where the rights of no other claimant or pre-emptor are prejudiced, or where there is no adverse claim."

With the limitations thus placed upon the construction to be given to sections 2450 and 2451, we are of opinion that the views contended for by appellees cannot be sustained. No authorities are cited to support their contention, and we apprehend none can be found, except the opinion rendered by the circuit court in this case (75 Fed. 946), and by the same court in Land Co. v. Hollister, 75 Fed. 941, 945. The only decision of the supreme court with reference to the provisions of these sections to which our attention has been called is Foley v. Harrison, 15 How. 443, 447. In that case the court held that under the act of August 3, 1846 (which includes sections 2450 and 2451), the commissioner of the general land office had power to decide finally on the claims of the respective parties to certain lands, and that his decision and a patent issued thereon were conclusive. In the course of the opinion the court said:

"These patents were issued under the act of 3d of August, 1846. That act provides 'that the commissioner of the general land office be, and he is hereby, authorized and empowered to determine, upon principles of equity and justice, as recognized in courts of equity, and in accordance with general equitable rules and regulations to be settled by the secretary of the treasury, the attorney general, and commissioner conjointly, consistently with such principles, all cases of suspended entries now existing in said land offices, and to adjudge in what cases patents shall issue upon the same.' Sections 2450, 2451, Rev. St. This power is limited to two years, and the exercise of it shall only operate to devest the title of the United States, but shall not prejudice conflicting claimants."

In the numerous decisions of the supreme court sustaining the authority of the commissioner of the general land office and of the secretary of the interior to affirm, modify, or annul the entries of public land made in the local land offices, no reference is made to the pro-

visions of sections 2450, 2451. Notwithstanding this fact, we are asked to assume that that court must have overlooked these provisions of the statute. We decline to act upon any such assumption.

3. The next question for consideration is whether or not the appellees were innocent purchasers for value, and are entitled, as such, to be protected, notwithstanding the fraud, if any, committed by the entryman. The certificate or receipt which Hackley received from the land office invested him with the equitable title to the land in controversy. By this purchase he obtained the right to a patent to the land, provided his acts were in all respects such as, under the law, justified the issuance to him of a patent thereto. His purchase of the land was necessarily subject to the rules and regulations of the land department. It was subject to the control of the commissioner of the general land office. The decisions of the local land office and of the commissioner were liable to be reversed by the action of the secretary of the interior. The law is well settled that the purchaser of an equitable title takes only such an interest in the property as his grantors had at the time of the purchase. This being true, it logically follows that when Bailey took the deed from Hackley, and when the appellees took the deed from Bailey, they only acquired a title to the land which was subject to the final action of the land department, and to such steps or proceedings as might thereafter be had in the courts to affirm, modify, or annul the final decision of the officers of the land department in regard thereto. Having purchased the land before the issuance of the patent, while the government still held the legal title, they obtained only an equitable title, and are not entitled to protection as bona fide purchasers. This result necessarily follows from the views expressed and authorities cited in the first subdivision of this opinion.

4. Finally, it is argued on behalf of appellees that the decision of the secretary of the interior canceling the entry of Hackley "was solely the result of his misconstruction, misinterpretation, and misunderstanding of the law, and that it was not the result of his judgment upon the facts presented for his consideration." There were 11 other entrymen whose cases were considered at the same time as Hackley's, and the decision of the secretary of the interior applies to all the cases. In his decision the secretary said:

"The paramount and controlling question in the case, applicable alike to all these entries, is: Were they made in good faith, for the benefit of the respective entrymen, or were they fraudulently made for, and in the interest of, another or others? The fraud charged in connection with these entries is that they were made at the instance, and for the benefit, of Stephen S. Bailey and J. Theodore Lohr, to whom the lands were sold and conveyed, one tract before, and the others soon after, the entries were made. The government offered no testimony in chief to support the allegations that said entries were made in the interest of said transferees, other than what might reasonably be inferred from the records showing dates of said entries and transfers thereof. These entries were all transferred to said Stephen S. Bailey."

Lohr conducted the negotiations concerning all the lands. He "conducted the negotiations for the purchase of Hackley's entry, but made no agreement prior to April 30, 1883, the date of his entry." This witness was asked the following question: "Did it occur to

you, when you were locating these entrymen, and subsequently buying up their claims for the mutual benefit of S. S. Bailey and yourself, that you were operating in direct violation of the spirit of the timber law?" And he answered: "I did not believe that I was violating any law, any more than I would buy locations made by other parties, so long as I used due diligence in making purchases when parties had the right to sell, according to the advice given me." This witness also stated that he had been paid by Mr. Bailey his full share of the profits arising from the sale to Hawley and Alger, and had no interest in the result of the trial.

In addition to the testimony given at the hearing, the secretary referred to the fact that one Carson, a special agent of the government, had investigated the cases, and reported all the entries as fraudulent. None of the entrymen were called as witnesses for the transferees, nor was Bailey sworn or offered as a witness on his own behalf. The secretary, in reviewing the testimony, said:

"I have thus stated in detail, and at unusual length, the evidence relating to the alleged fraudulent character of these entries in the transactions between Bailey and the entrymen, for the purpose of making clear the grounds upon which my conclusion is based. At every point Mr. Bailey appears. The conveyances were made to him very shortly after the entries were made. He advanced the money to make the entries in most, if not in all, cases. He was an hotel keeper. Lohr was to select the lands, find the persons to make the entries, locate them thereon, and Bailey was to pay the expenses. Upon the purchase of the land, Bailey was to receive a deed for the tract, and Lohr and Bailey were to divide the profits between them. Lohr says this is so in his affidavit, although it is true he seeks to avoid it when he is put on the witness stand. All the circumstances satisfy my mind that this was the arrangement. Lohr picked up clerks, bartenders, grocery men, school teachers, lawyers,—in a word, anybody who was willing to make the location, or be concerned in it, for a consideration. They were mostly young men, without any permanent abiding place. It is very strange, indeed, if they entered that land for their exclusive use and benefit, that they should have conveyed it to Mr. Bailey on the same day that the entries were made, or within a day or two thereafter, when the evidence shows that he was engineering these entries from the time the parties made the first affidavit until they submitted their final proof in support of their entries. It is very plain to my mind that this was a scheme put up, in the first instance, by Lohr and Bailey, for the purpose of acquiring title to the land for speculative purposes. To my mind this raises an impassable barrier, if the law is to be observed, to the sustaining of these entries. The purpose and intent of the act was to give every citizen of the United States, or one who has declared his intention of becoming such, the opportunity to purchase 160 acres of land under said act, if it was unfit for cultivation; but in every case the entryman is required to act in good faith, but none of the entrymen at the time they made these purchases did so in good faith, in harmony with the spirit and letter of the law. This holding in no wise conflicts or interferes with the right of a purchaser in good faith of land under the act, after he acquires title, to sell the land, if he desires so to do. Sales made soon after purchase, however, if unexplained, have a tendency to arouse suspicion in the mind that when the entry was made it was not for the entryman's own exclusive benefit and use; and when we find 12 entries made in the manner in which these were made, money furnished by the assignee, engineered by the assignee, deeded to the assignee, and this arrangement made prior to the time the locations were made, I do not see any escape from the conclusion that they were made in violation of the statute, and ought not to stand."

In the administration and disposition of the public lands the decisions of the land department upon the questions of fact are deemed conclusive. It is only questions of law that are reviewable in the

courts. Bishop of Nesqually v. Gibbon, 158 U. S. 165, 166, 15 Sup. Ct. 779, and numerous authorities there cited. The secretary of the interior found as a fact that the entry was made by Hackley "for the purpose of acquiring the land for speculative purposes"; that the entry was not made "in good faith, in harmony with the spirit and letter of the law." Did the secretary of the interior err in his construction or interpretation of the law? We are of opinion that this question must be answered in the negative. Section 2 of the act of congress of June 3, 1878, provides that any person desiring to avail himself of the provisions of this act shall file with the register of the proper district a written statement, among other things:

"That he does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit; and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person or persons whatsoever, by which the title which he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself, which statement must be verified by the oath of the applicant before the register or the receiver of the land office within the district where the land is situated; and if any person taking such oath shall swear falsely in the premises, he shall be subject to all the pains and penalties of perjury, and shall forfeit the money which he may have paid for said lands, and all right and title to the same; and any grant or conveyance which he may have made except in the hands of bona fide purchasers shall be null and void."

U. S. v. Budd, 144 U. S. 154, 12 Sup. Ct. 575, is relied upon to support the view that the secretary of the interior acted upon an erroneous construction of this act. That case was in many essential particulars different from the case at bar. There the entry was made by Budd, who paid the purchase price and received the receiver's receipt, and thereafter a patent was issued to him by the government. Prior to the issuance of the patent, he sold and conveyed the land to one Montgomery. The suit was brought by the United States against Budd and Montgomery to set aside the patent, on the ground that it was obtained wrongfully and fraudulently, and in defiance of the restrictions of the statute. The case was disposed of upon the familiar principle that in this class of cases the respect due to a patent, the presumptions that all the preceding steps required by the law had been observed before its issue, the immense importance and necessity of the stability of titles dependent upon the official instruments, demand that the effort to set them aside, to annul them, or to correct mistakes in them, should only be successful when the allegations on which this is attempted are clearly stated and fully sustained by proof. Maxwell Land Grant Case, 121 U. S. 325, 381, 7 Sup. Ct. 1015; Colorado Coal & Iron Co. v. U. S., 123 U. S. 307, 8 Sup. Ct. 131; U. S. v. Des Moines Navigation & Ry. Co., 142 U. S. 510, 12 Sup. Ct. 308. The particular charge there made and relied upon by the government was "that Budd, before his application, had unlawfully and fraudulently made an agreement with his co-defendant Montgomery, by which the title he was to acquire from the United States should inure to the benefit of such co-defendant." The evidence in that case failed to establish this charge by the proofs demanded, under the rule as above stated. The land department and the circuit court so held, and the supreme court af-

firmed the judgment. The court, in the course of its opinion, said that all that the act "denounces is a prior agreement,—the acting for another in the purchase. •If, when the title passes from the government, no one save the purchaser has any claim upon it, or any contract or agreement for it, the act is satisfied." This language should be construed with reference to the particular charge made by the pleadings in that case. We are of opinion that it was not intended by the court to apply to all of the provisions of the act contained in section 2. In that case the testimony about other entries was excluded. Here, by stipulation, twelve entries were tried as one, and the entire testimony in all the cases was admitted. In the present case, in many respects, the questions involved are entirely the reverse of those presented to the court in United States v. Budd. Here, if any presumptions are to be indulged in, they must be invoked in behalf of the action of the land department. It must be clearly and convincingly shown that the secretary of the interior acted without authority of law, or that he erred in his judgment as to the legal construction of the act.

We are of opinion that the evidence upon which the secretary of the interior acted was sufficient to justify the inference that there was some prior understanding, although not directly shown, between Hackley, the entryman, and Lohr, acting with and for Bailey, that his acts should inure to their benefit, and that he applied to purchase the land on a speculation, and not "in good faith, to appropriate it to his own exclusive use and benefit"; and that such acts are as much in violation of the statute as if the entryman had directly made a contract in writing with a person, by which the title which he might acquire from the government should inure to such person; and that the facts elicited upon the trial of this case in the circuit court are not of such a character as to authorize the court to enter a decree in favor of the appellees herein.

The decree and judgment of the circuit court are reversed, with directions to the court to dismiss the bill, with costs in favor of appellant.