## UNITED STATES v. CLARK.

### (Circuit Court, D. Montana. November 7, 1903.)

### No. 157.

1. PUBLIC LANDS—SALE BEFORE ISSUANCE OF PATENT—BONA FIDE PURCHASERS.

Where an entryman of public lands sold the land to defendant's vendor after the issuance of the entryman's final certificate, who thereafter sold the land to defendant before the issuance of patents, which were subsequently issued to the original entryman, the fact that defendant purchased before the issuance of the patent did not deprive him of the rights of a bona fide purchaser for value.

2. SAME—VACATION OF PATENT—FRAUD—EVIDENCE.

A patent for public land will not be set aside on the ground of fraud committed by the patentees, where the proof is only sufficient to raise a suspicion of fraud not amounting to a conviction.

3. SAME.

Facts reviewed, and *held* insufficient to authorize a decree setting aside a patent for public lands on the ground of fraud alleged to have been committed by the patentees.

In Equity.

Fred. A. Maynard, for the United States.

Walter M. Bickford and T. J. Walsh, for defendant.

KNOWLES, District Judge. In this suit the United States has filed its bill of complaint praying that certain patents, 82 in number, under which the defendant, William A. Clark, claims title to certain timber lands within the state of Montana, be set aside and annulled, upon the ground of alleged frauds committed by the patentees named in said patents in procuring the issue of the same. The patentees obtained these patents for timber lands under Act June 3, 1878, c. 151, 20 Stat. 89, as amended by Act Aug. 4, 1892, c. 375, 27 Stat. 348 [U. S. Comp. St. 1901, p. 1545], and, after having made final proof

¶ 1. See Public Lands, vol. 41, Cent. Dig. § 368.

upon their several entries, and having received certificates of purchase from the proper officers of the United States Land Office for the districts in which their several entries were situated, conveyed the same to one Robert M. Cobban. The said Cobban conveyed the same to the defendant, William A. Clark. The defendant, Clark, filed an answer to the bill, in which he denies all of the material allegations therein contained, and sets up the defense to the effect that he was and is an innocent purchaser of said lands for a valuable consideration and without notice. To this answer the general replication was filed, and the case was referred, and proofs taken.

The proof discloses the fact that Clark purchased the lands from Cobban for a valuable consideration, before the patents were issued therefor by the government. It is claimed on the part of the government that on account of this fact Clark could not be a bona fide purchaser, and was chargeable with notice of certain frauds alleged to have been committed by the patentees. In support of this contention counsel for the government has cited the following authorities: U. S. y. Steenerson et al., 50 Fed. 504, 1 C. C. A. 552; American Mortgage Company of Scotland, Ltd., v. Hopper et al. (C. C.) 56 Fed. 67, affirmed in 64 Fed. 553, 12 C. C. A. 293; Hawley v. Diller (C. C.) 75 Fed. 946; Diller v. Hawley, 81 Fed. 651, 26 C. C. A. 514; Hawley v. Diller, 178 U. S. 476, 20 Sup. Ct. 986, 44 L. Ed. 1157; U. S. v. Bailey, 17 Land Dec. Dept. Int. 468. In all of the above-cited cases no patent had been issued by the government to the entryman, and pending such issue of patent, and while the Land Department of the government had still full jurisdiction over the matter, the entries were canceled and patents refused. The purchasers from the entrymen had made their purchase after the issue of certificates of purchase, but before the issue of patent, and claimed that the Land Department of the government could not lawfully cancel such entries, and contended that they stood in the same position as if a patent had been issued to the entryman. Under the practice of the Land Department of the United States any allowance of an entry for a patent can be recalled for sufficient reasons at any time before the actual issue of the patent therefor, and the entry of the applicant canceled. Any one purchasing from an entryman who has received his final certificate of purchase only purchases such interest in the land as the entryman has, subject to the right of the Land Department of the government to review its action and refuse to issue the patent. This is a well-known practice, and often resorted to, and any one purchasing from an entryman who has not obtained a patent must take notice of the same. Hence a purchaser under such circumstances is not entitled to the protection accorded an innocent purchaser for a valuable consideration and without notice. That is all that was decided by the cases above cited.

In the case at bar the Land Department had made no withdrawal of its approval of the right of the entrymen to a patent, but, on the contrary, issued a patent to each of them, which they now hold, and has converted an otherwise equitable title into a full legal title, and under the laws of Montana their after-acquired title inured to the benefit of the defendant, Clark. See section 1512, Civ. Code Mont.

The jurisdiction and power of the Land Department over these entries ceased wholly when the patents were issued, and it could not recall the same. U. S. ex rel. McBride v. Carl Schurz, Secretary of the Department of the Interior, 102 U. S. 408, 26 L. Ed. 219. It has often occurred that parties have purchased land from entrymen who had received certificates of purchase of the land sold, and subsequently patents have been issued therefor. In none of these cases has it been contended that the purchaser to whom the title inured after issue of the patent was not considered entitled to the rights accorded to a bona fide purchaser under the law, if he was without notice of any fraud committed by the entryman. In the case of Colorado Coal & Iron Co., 123 U. S. 307, 8 Sup. Ct. 131, 31 L. Ed. 182, the fact was presented that a purchase of some of the property a patent to which was sought to be canceled and annulled had been made before the patent was issued. This is the statement contained in the opinion:

"For these [entries] Hunt sent to Jackson deeds duly executed, attested, and acknowledged, accompanied by receiver's certificates in regular form, showing that the party named as grantor was entitled to a patent. These he was advised by counsel to accept, and did accept in good faith, as being equivalent to patents."

That case was presented by eminent counsel, and very carefully considered by the Supreme Court, and no suggestion was made that a purchaser of lands from an entryman before patent issued was not to be considered as a bona fide purchaser after such patent was in fact issued, and thereby his equitable title had become merged into the full legal title. If the doctrine contended for by counsel for the government in this case should prevail, no purchaser of a title to government land which has a foundation in a deed executed before patent issued would be secure, and the insecurity pointed out that would arise in the cases where it is sought to set aside and cancel patents against bona fide purchasers for alleged fraud on the part of the entrymen would be ever present, and could not be eliminated, for the reason that the statute of limitations does not run against the government. But let it be considered that the defendant, Clark, was bound to take notice of the different steps taken by the entrymen in obtaining these patents. What would he be required to take notice of? The records of the Land Office appear to have been in due form and correct. They were such as induced the Land Department to issue the proper patents to the entrymen and entrywomen. I do not think he could be required to be more astute than the land officers themselves. But suppose he had gone further, and made inquiry of the various persons who made the entries, and secured the final certificates of purchase from the proper officers of the Land Department, and upon inquiry had been told the same facts as were sworn to in the affidavits of these parties at the time when they made their final proofs and payment, and the same as was testified to at the hearing before the special examiner in this case? But it cannot be conceded that there is any evidence that shows that Clark was put upon his inquiry as to the sources of his title. There is absolutely no proof showing or tending to show

that Clark had any actual knowledge of the frauds alleged to have been committed by the entry men and women. The evidence shows conclusively that Cobban was not the agent of Clark in the purchase of these lands. Cobban was the vendor. In setting aside a patent issued by the government after the title has passed from the patentee to a third party, the rule laid down in U. S. v. Maxwell Land Grant Company, 121 U. S. 325, 7 Sup. Ct. 1015, 30 L. Ed. 949, as to the evidence necessary to authorize a court to do this, should be observed and control the court in a case like this. That rule is as follows:

"We take the general doctrine to be that when, in a court of equity, it is proposed to set aside, to annul, or to correct a written instrument, for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt. If the proposition as thus laid down in the cases cited is sound in regard to the ordinary contracts of private individuals, how much more should it be observed where the attempt is to annul the grants, the patents, and other solemn evidences of title emanating from the government of the United States under its official seal. In this class of cases the respect due to a patent, the presumption that all the preceding steps required by law had been observed before its issue, the immense importance and necessity of the stability of titles dependent upon these official instruments, demand that the effort to set them aside, to annul them, or to correct mistakes in them should only be successful when the allegations on which this is attempted are clearly stated and fully sustained by proof. It is not to be admitted that the titles by which so much property in this country and so many rights are held, purporting to emanate from the authoritative action of the officers of the government, and, as in this case, under the seal and signature of the President of the United States himself, shall be dependent upon the hazard of successful resistance to the whims and caprices of every person who chooses to attack them in a court of justice; but it should be well understood that only that class of evidence which commands respect, and that amount of it which produces conviction, shall make such an attempt successful."

It is not necessary to consider the various contentions in this case upon the subject of the evidence admitted. All of the evidence presented in the record, whether objected to or not, would not change the ruling of this court. It should be observed, however, that there is a great deal of irrelevant testimony presented, and there has been an indulgence in asking leading questions of the witnesses for the complainant that is unprecedented. It is claimed that these witnesses were hostile witnesses. There is no appearance, however, of reluctance on the part of any of the witnesses to testify in the case. The witnesses were the witnesses of the complainant, and it ought to have been made to appear clearly in the record that these witnesses were hostile. They were not parties to the suit. As to the witness Griswold, who was certainly a most willing witness for the complainant, the same practice was observed. It does not seem to me that in considering a case like this, under the rule laid down in the Maxwell Land Grant Case, supra, his testimony ought to be given any weight. According to his own admissions, he had willfully, deliberately, and corruptly sworn falsely as a witness for some of the entrymen and entrywomen who made proofs in the Land Office. He had also made an affidavit contradicting his evidence as to the agreement he had

with Cobban, which agreement he previously claimed had authorized him to make contracts for the purchase of their lands with the entrymen and entrywomen before their final proofs were made in the Land Office. His general reputation for honesty and truthfulness was attacked in court by respectable witnesses, and he did not sufficiently rebut this evidence. It was shown that he had received money from parties to suppress evidence concerning the alleged illegal cutting of timber upon the public domain. It was further shown that he had received some kind of assurance from representatives of the government that, should he testify as he had stated to them, he might be awarded public employment. What passed between him and the Department of the Interior upon this subject that department claimed as being privileged, and refused to divulge. Such a witness as this could hardly furnish proofs clear and satisfactory. If we consider the evidence of the entrymen and entrywomen, we find that they positively and emphatically deny that they had made any contracts to convey the lands to Cobban before final entry and purchase. While there may be suspicion that this evidence was not correct, and a supposition that there must have been made some contract between Cobban and themselves in regard to this matter, it must be borne in mind that these witnesses were witnesses produced by complainant, and, except where the witness Griswold testified otherwise, no evidence was introduced to contradict this, and the court is called upon by the complainant to find from its suspicion or supposition that there was such a contract. Cobban himself testified that he knew the law, and knew that such a contract was in violation thereof, and that he was careful to make no such contract whatever; and, again, Cobban was a witness for the complainant.

Considering all of this evidence, it would seem that stronger cases for the setting aside of a patent for fraud on the part of the entryman were presented in the cases of Colorado Coal & Iron Co. v. U. S., 123 U. S. 307, 8 Sup. Ct. 131, 31 L. Ed. 182; U. S. v. Budd, 144 U. S. 154, 12 Sup. Ct. 575, 36 L. Ed. 384; and U. S. v. Detroit Timber & Lumber Co. et al. (C. C.) 124 Fed. 393. Considering the rule as to evidence necessary to establish fraud in such cases as this, and the rulings of the courts in the above cases, I am constrained to the view that it is not established that the entrymen and entrywomen and Cobban committed the frauds charged in the bill.

For the above reasons the bill must be dismissed.