NORTHERN PAC. RY. CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1910.)

No. 1,719.

1. PUBLIC LANDS (§ 81*) — LANDS SUBJECT TO SELECTION IN LIEU OF PARK LANDS—CONSTRUCTION OF STATUTE.

Act March 2, 1899, c. 377, 30 Stat. 993, creating the Mt. Rainier National Park, and authorizing the Northern Pacific Railroad Company, on reconveying its lands within such park to the United States, to "select an equal quantity of nonmineral public lands, so classified as nonmineral at the time of actual government survey, which has been or shall be made," etc., in lieu of those so reconveyed, requires that the lands so selected shall be in fact "nonmineral public lands," which is the plain provision of the act and in accordance with the settled policy of Congress; and the company was not entitled to select lands then known to be mineral lands, valuable for their coal deposits, merely because at the time of their survey, several years before, they were classified as nonmineral, and patents issued to it for such lands with knowledge of their true character were without authority of law, and will be canceled at suit of the government.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 81.*]

2. PUBLIC LANDS (§ 102*)—AUTHORITY OF LAND DEPARTMENT—CORRECTION OF MISTAKES.

Fraud in the entry or selection, or any mistake of law or lack of authority on the part of the officers of the Land Department to make the entry, sale, or exchange, as the case may be, of the public lands, may be inquired into and determined by that department at any time prior to the issuance of patent.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 102.*]

Appeal from the Circuit Court of the United States for the District of Montana.

Suit in equity by the United States against the Northern Pacific Railway Company and others. Decree for complainant (170 Fed. 498), and defendants appeal. Affirmed.

William Wallace, Jr., John G. Brown, R. F. Gaines, Charles W. Bunn, and Charles Donnelly, for appellants.

T. J. Walsh, C. B. Nolan, James W. Freeman, U. S. Atty., and Frank Hall, for the United States.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The appellee brought this suit to obtain a decree annulling certain patents which had been issued to the appellant Northern Pacific Railway Company, as the successor in interest of the Northern Pacific Railroad Company, for certain coal lands situated in Carbon county, Mont. Congress, by act approved March 2, 1899 (30 Stat. 993, c. 374), provided for the creation within certain specified boundaries of a national park in the state of Washington, the title of the act being "An act to set aside a portion of certain lands in the state of Washington, now known as the Pacific Forest Reserve, as a public park to be known as the Mt. Ranier National Park." · Prior to the passage of that act certain lands falling within those exterior boundaries had been conveyed by the government to the Northern

Pacific Railroad Company as a part of the land grant made to it by Congress, and to which lands the Northern Pacific Railway Company subsequently succeeded.    The third and fourth sections of the act of March 2, 1899, are as follows:

"Sec. 3. That upon execution and filing with the Secretary of the Interior by the Northern Pacific Railroad Company of proper deed releasing and conveying to the United States the lands in the reservation hereby created, also the lands in the Pacific Forest Reserve which have been heretofore granted by the United States to said company, whether surveyed or unsurveyed, and which lie opposite said company's constructed road, said company is hereby authorized to select an equal quantity of nonmineral public lands, so classified as nonmineral at the time of actual government survey which has been or shall be made, of the United States, not reserved, and to which no adverse right or claim shall have attached or have been initiated at the time of the making of such selection, lying within any state into or through which the railroad of said Northern Pacific Railroad Company runs, to the extent of the lands so relinquished and released to the United States: Provided, that any settlers on lands in said national park may relinquish their rights thereto and take from the public lands in lieu thereof to the same extent and under the same limitations and conditions as are provided below for forest reserves and national parks.

"Sec. 4. That upon the filing by the said railroad company at the local land office of the land district in which any tract of land selected, and the payment of the fees prescribed by law in analogous cases, and the approval of the Secretary of the Interior, he shall cause to be executed in due form of law, and delivered to said company, a patent of the United States conveying to it the lands so selected.   In case the tract so selected shall at the time of selection be unsurveyed, the list filed by the company at the local land office shall describe such tract in such manner as to designate the same with a reasonable degree of certainty; and within the period of three months after the lands including such tract shall have been surveyed and the plats thereof filed by said local land office, a new selection list shall be filed by said company describing such tract according to such survey; and in case such tract as originally selected and described in the list filed in the local land office shall have precisely conformed with the lines of the official survey, the said company shall be permitted to describe such tract anew so as to secure such conformity."

On the 19th of July, 1899, the Northern Pacific Railway Company, as successor in interest of the Northern Pacific Railroad Company, executed its deed conveying to the United States its lands within the proposed park, and thereby became entitled to select and receive an equal quantity of the class of lands described in section 3 of the act of 1899 above set out.    In December of the same year the railway company selected the lands in suit, which had been surveyed by the government several years theretofore, and had been by its surveyor "classified as nonmineral at the time of actual government survey."    As a matter of fact the lands so surveyed were mineral lands, which fact was known to the railway company at the time of its selection of them, and it was because of their known mineral value that they were so selected.    The selections were approved by the register and receiver of the local land office, and transmitted to the Commissioner of the General Land Office at Washington.    Thereafter, and previous to the issuance of any patent for such lands, various persons, seeking to enter portions of them under the provisions of the United States statutes relating to mineral lands, asked for the cancellation of the selections made by the railway company, upon the ground that the lands in question contained valuable deposits of coal, and protested against the issu-

ance of patents therefor to the railway company. It was finally held by the Secretary of the Interior (Davenport v. Northern Pacific Railway Co., 32 Land Dec. Dep. Int. 28) that the railway company was entitled to select these lands under the act of March 2, 1899, and accordingly on the 17th of August, 1903, patents covering them were issued to the company. The facts above stated are undisputed, and the case of the government rests upon the alleged mistake of law on the part of the officers of the Land Department in issuing the government patents, pursuant to their ruling that the railway company was entitled to select and have patented to it under the provisions of the act of March 2, 1899, mineral lands of the United States, at the time knowing them to be such, provided such lands had theretofore been erroneously classified by the government surveyor as nonmineral.

We agree with the court below that the construction placed by the Land Department upon the act of Congress was wrong. The provision for the exchange of lands is that for all lands within the exterior boundaries of the part conveyed to the United States by the railway company the latter was authorized "to select an equal quantity of nonmineral public lands, so classified as nonmineral at the time of actual government survey which has been or shall be made, of the United States, not reserved," etc. The effect of the Land Department's construction of this language is to practically eliminate the words "nonmineral" and "so," and give to the act the precise meaning it would have if the provision read:

"Said company is hereby authorized to select an equal quantity of public lands, classified as nonmineral at the time of the actual government survey."

It is manifest, we think, that that cannot be properly done, not only because each word in a statute must be given effect where that is possible, but also because such a construction absolutely eliminates the most important words in the clause in question, to wit, "nonmineral"; for in acts almost innumerable relating to the disposal of the public lands Congress has manifested its consistent and insistent intent that its known mineral lands should be disposed of only in accordance with the provisions of its statutes governing that class of lands. The ambiguity suggested in respect to the language is, in our opinion, more apparent than real. We repeat the language, as follows:

"Said company is hereby authorized to select an equal quantity of nonmineral public lands, so classified as nonmineral at the time of actual government survey which has been or shall be made, of the United States, not reserved," etc.

The words "public lands" in this clause are qualified by the adjective "nonmineral," which precedes them, as well as by the phrase "so classified as nonmineral at the time of the actual government survey which has been or shall be made," which follows them. In other words, the lands authorized by Congress to be taken by the railway company in lieu of lands conveyed by it to the United States must not only have been classified by the government surveyor as nonmineral, but must be nonmineral in fact. As is well said by the Attorney General:

" 'He was a black Tartar of the Ukrane breed,' means exactly the same as 'He was a black Tartar, and of the Ukrane breed.' "

Under this act, if at the time of the application for the land by the railway company the Land Office finds the land applied for classified as mineral at the time of the actual survey, the selection must be rejected. If returned by the government surveyor as nonmineral, inquiry as to the true character of the land is still open to the government up to the time of issuance of its patent. The law in respect to that matter is well settled. Fraud in the entry or selection, or any mistake of law or lack of authority on the part of the officers of the Land Department to make the entry, sale, or exchange, as the case may be, of the public lands, may be inquired into and determined by that department at any time prior to the issuance of patent (Orchard v. Alexander, 157 U. S. 372, 383, 15 Sup. Ct. 635, 39 L. Ed. 737; Lumber Co. v. Rust, 168 U. S. 589, 593, 18 Sup. Ct. 208, 42 L. Ed. 591; Diller v. Hawley, 26 C. C. A. 514, 81 Fed. 651; Hawley v. Diller, 178 U. S. 476, 20 Sup. Ct. 986, 44 L. Ed. 1157), after which the matter becomes subject to inquiry only in the courts (U. S. v. Stone, 2 Wall. 525, 535, 17 L. Ed. 765; Moore v. Robbins, 96 U. S. 530, 24 L. Ed. 848; U. S. v. Schurz, 102 U. S. 378, 396, 26 L. Ed. 167; Bicknell v. Comstock, 113 U. S. 149, 151, 5 Sup. Ct. 399, 28 L. Ed. 962; Mining Co. v. Campbell, 135 U. S. 286, 10 Sup. Ct. 765, 34 L. Ed. 155; Williams v. U. S., 138 U. S. 514, 11 Sup. Ct. 457, 34 L. Ed. 1026). But matters of fact, such as the character of the land, its condition as to occupancy, and the like, when once investigated and determined by the officers of the Land Department, and the applicant allowed to select or enter and pay for it, vests a right which cannot be affected by subsequent discoveries in respect to its character or condition. Authorities supra; Colorado Coal & Iron Co. v. U. S., 123 U. S. 307, 328, 8 Sup. Ct. 131, 31 L. Ed. 182; Spratt v. Edwards, 15 Land Dec. Dep. Int. 290, 291; Davis' Adm'r v. Weibbold, 139 U. S. 507, 11 Sup. Ct. 628, 35 L. Ed. 238; Jones v. Driver, 15 Land Dec. Dep. Int. 514, 518; and numerous cases cited in Olive Land & Development Co. v. Olmstead (C. C.) 103 Fed. 568.

The judgment is affirmed.